[Continued from-*ante* page 189.].

---

## O. A. DODGE *v.* STACY AND APPLETON.

*Way.   Prescription.   Evidence.   Estoppel.   Agency.   Dedication.*
*Notice.*

Where one claims a right of way by prescription he must show the use thereof in himself and his grantors for fifteen years under proper claims and acquiescence, *unaided* by the use of the way, as a private way, by the owners and occupiers of the other lots thereon; therefore a charge to the jury, in such case, indicating that they should consider the use of the way by the owners of other lots, and the acquiescence therein, would be erroneous.

T. deeded a lot to W. by which the alley in 'question extended. The point of inquiry was, whether W. and his successors used the alley *under a claim of right.* *Held*, that, upon this point, the declaration as well as the acts of T. in respect to the use of the alley, during the period within which it was alleged that the plaintiff's right to the way was being perfected, was admissible evidence.

During this time, T. claimed to own the alley, that it was valuable and that the owners of lots on the north side had no right to use it without paying him therefor. *Held*, that the court should have called the attention of the jury to this testimony in connection with the other testimony upon the question of acquiescence by T. as tending to show the want of acquiescence on his part.

The fifteen years use necessary to maintain a prescriptive right of way, would not commence running until the way began to be used under a claim of right; but the fact that such claim was made, may be proved by words, together with use; or the mere use of the way, if expressly shown to have come to the knowledge of the owner of the soil, will *prima facie* establish the fact that the use was under a claim of right, unless the owner of the soil did not so understand it, and was not bound to so regard it from the nature and extent of the use.

If A. commences in his life time to use a way under such claim and acquiescence as would in fifteeen years ripen into a prescriptive right, but dies before the fifteen years expires, his heirs could avail themselves of the expired portion of the fifteen years by continuing such use; but such right would not be perfected and gained by their silence in respect to the way and their *non user* of it.

C. was administrator upon W's estate, and was an heir of W. and agent for the other heirs, and as such was in possession and had the management and control of the lot now owned by the plaintiff, and stood by and suffered D. to erect a barn across said alley so as completely to obstruct the same, without objection or notice to D. of any claim to said way, but protested against D's extending it four inches on to said lot. *Held*, that C's conduct estopped him from asserting any claim to the alley as against D. and his grantees.

If the right of way had then become perfected in C. and the other heirs, the effect of his conduct upon the right of the other heirs would depend upon his express or implied authority as their agent, and the question of such express or implied authority was a question for the jury.

The plaintiff proved that T. said to M., who purchased a lot of him on said alley in 1829, that the alley was always to be kept open, and that he acted upon the statement, and that he afterwards tried to buy more land of T. adjoining his lot, that T. said he could not sell more to him because the alley was to be kept open, *Held*, that the testimony was admissible as tending to show a dedication of the alley by T. as a public way.

On the cross-examination the witness M. was inquired of whether he had not heard rumors that T. objected to the owners on the north side using the way without his leave. *Held*, that such rumors were properly excluded.

Where a judge in his charge to the jury, details all the essential facts necessary to establish a right in a party, it would be improper for him to illustrate the point by an illustration that does not embrace all such facts.

The court charged the jury upon the point of dedication of grounds to public use, that a man has a right to throw open his grounds for this purpose; that persons acting upon such dedication by buying lands of him upon such way, have a right to use the way; that in order to make a dedication of a public highway, the intention of the owners of the land to dedicate it to public use, must be manifested, so as to make it clear to all persons making use of the way, what that dedication is, as for instance, if a man sells land bounding it upon such a street or way. *Held*, that the charge was directly calculated to mislead the jury as to what was essential to a dedication.

To render a dedication binding, there must be a dedication by the owner, and something equivalent to an acceptance by the public. The mere fact that purchases of lots on the way were made upon the faith of the ways being appropriated to the public use, would not be such equivalent.

The charge of the court to the jury upon that branch of the case pertaining to the opening of the way by T., his purpose thereby and the understanding of purchasers of lots, should have been more definite and direct.

Dodge *v.* Stacy et al.

An action on the case for obstructing a way cannot be maintained against parties who did not erect the obstructions, but were grantees only, without previous notice to remove them.

*ACTION on the case in two counts. The first count was for an obstruction of a private way; the second count, for an obstruction of a public highway; both ways being the same piece, and situated in Burlington. Plea, the general issue, and trial by jury September Term, 1866; PIERPOINT, Ch. J., presiding.

The plaintiff conceded that the obstructions of the way in question, consisting of a barn and other buildings built thereon, entirely covering and obstructing the way, existed precisely as they were when the plaintiff bought the premises, and as they were when this suit was brought previous to the deed to the defendants of their close; which deed, included the land covered by the way in question, and the land adjacent on the south; that these obstructions were erected by one Dorr in 1852, whose title, through several successive grantees, came to the defendants, and that the defendants never erected any additional obstructions to said way; and no evidence was given of any request to the defendant at any time, to remove the obstructions. But it did appear that, soon after the execution of the deed from Thomas' administrator to Willard, and while the lot, now owned by plaintiff, belonged to the heirs of Wainwright, Willard, (who, as to the title to the alley, the plaintiff claimed, and introduced some evidence tending to show, was merely a trustee of William L. Strong,) built a fence across the westerly end of the alley, and that while he was doing so, Carlos Wainwright told him that he (Willard,) had no right to close up the alley,—that owners of lots on the north side had a right of passage there.

Mr. Mitchell stated he was, himself, in the habit of using the way while he owned lot No. 6, from 1829 to 1845, and so were the other owners on the north side of the alley, and other people, but he had no knowledge of Wm. Wainwright using it, or claiming a right so to do. The witness, Mitchell, having testified that the alley was

*The bill of exceptions did not describe the premises in question, but referred for a description to a plan containing the alleged way, and the lots adjacent thereto, which was used on the trial of the case, but was not furnished the reporter.

open from Church street to Markham's alley at the time he pur-
chased lot No. 6, of Col. Thomas, in January, 1829, the plaintiff
offered to show, by the witness, that when he was negotiating the
purchase, Col. Thomas stated to the witness, that the alley was
always to be kept open. To this evidence the defendant objected, in
due season, but the court admitted the evidence, to which the defend-
ant excepted and the witness testified—" that, at the time he bought
said lot of said Thomas, said Thomas told him the alley was always
to be kept open." The witness further testified that he acted upon
said statement of Thomas, and filled up the whole front of his lot on
Cottage street, which he should not otherwise have done. That he,
afterwards, tried to buy more land of Thomas adjoining the back of
his lot; that Thomas said he could not sell it to him because the lane
was to be kept open. On cross-examination the witness was
inquired of, whether he had not heard rumors, that Thomas objected
to the owners, on the north side, using the way without his leave.
The plaintiff objected, that the evidence was inadmissible, and the
court sustained the objection, to which the defendant excepted.

In regard to the plaintiff's right to recover, under the second
count of the declaration, the court instructed the jury, that a man
has a right to throw open his grounds and dedicate them to public
use, so as to give to all adjoining proprietors who should purchase
ground of him adjoining on the way, and all other persons, the right
to use it; that, persons acting upon such dedication by buying lands
of him upon such a way, have a right to use the way; that, in order
to make a dedication of a public highway, the intention of the owner
of the land to dedicate it to public use, must be manifested, so as to
make it clear to all persons making use of the way, what that dedi-
cation is, as for instance, if a man sells lands bounding it upon such
a way or street. That it was not necessary that the grantor should
so describe the way in his deed, but that if, after a way has been
thrown open to the public by the owner, he conveys land adjoining,
and in describing the land conveyed by distances, he brings the land
to such a way, though he says nothing about it, then he would be
bound to keep the way open for the accommodation of the purchas-
ers; that, on the other hand, a man has the right to open a way for

his own use, and if it is not opened as a public way, and used as a public way, he is not obliged to keep it open, even though he should convey land up to the way ; that it therefore became important to ascertain the purpose for which the way in question, was opened, and in determining that point, they would look at what was done in regard to it, the manner in which it was used, and the situation it was in, and all the evidence in the case bearing on the point. That Mitchell testified that when he purchased one of the lots on the north of this alley, Thomas said the alley was to be kept open for the benefit of those lots ; that this testimony of Mitchell was important only as tending to show Thomas' intention in opening this alley and keeping it open ; that, if the way was opened for the purpose of a public way, and has been used by the owners and occupiers of the land adjoining, and the public as such, Thomas would have no right to close it, and that the right of the public, or the proprietors, on the north of the alley, to use it, under such circumstances, would not depend upon the lapse of any particular time.

The other material evidence detailed in the exceptions, the requests of the defendants to the court to charge the jury and other portions of the charge in respect thereto, are set forth in the opinion of the court. To the refusal of the court to charge as requested, and to a part of the charge as given, the defendants excepted. Verdict was rendered for the plaintiff.

*J. Maeck, L. B. Englesby* and *Wm. G. Shaw* for the defendants.

*E. R. Hard,* for the plaintiff.

The opinion of the court was delivered by

Wilson, J. The bill of exceptions in this case presents several questions for review. The first relates to the testimony of Mitchell. The statements of Thomas to Mitchell, as detailed in the exceptions, do not appear to have been confined to a right of way which Mitchell would acquire if he should purchase lot No. 6, or had acquired by such purchase, but they tended to show that the alley was to be kept open for the benefit of all persons who should desire to travel it.

It seems clear that this testimony was admissible on the ground that it tended to show a dedication by Thomas of the land in question as a public way. The rumors that Thomas claimed that those on the north side of the alley had no right to travel it, were properly excluded. They had no tendency to rebut his acquiescence, and such testimony is uniformly held incompetent to establish any specific fact, which in its nature, is susceptible of being proved by witnesses who can speak from their own knowledge. The most important questions in this case, arise upon the refusal of the court to instruct the jury as requested, and upon the charge as given by the court.

To determine these questions it is necessary to examine the grounds upon which the plaintiff sought to recover, the defence and the several questions raised by the testimony in the case. The first count of the declaration was for an obstruction of a private way; the second count, which was for the same cause of action, described the way as a public highway. It appears that the plaintiff's lot, which is adjoining the way in question, was conveyed by Henry Thomas to William Wainwright, under whom the plaintiff claimed, May 27th, 1829, that William Wainwright died in 1840, that his father, Samuel Wainwright, was his heir, and died subsequently in the same year. It also appears that Carlos Wainwright, son and one of the heirs of Samuel, became administrator on his estate, and took possession of the property belonging thereto, including the close now owned by the plaintiff; that Samuel Wainwright left five other children besides the said Carlos; that the estate never was divided among the heirs, but was managed and controlled by Carlos Wainwright, as administrator of Samuel, and as agent for the other heirs of Samuel, until the 21st of September, 1865, when all the heirs of Samuel and their legal representatives, conveyed the premises now owned by the plaintiff to Sweet, who, on the 19th of February, 1866, conveyed the same to the plaintiff.

The plaintiff claimed that after the conveyance of his lot to Wainwright, by Thomas, the owners of the lot used the alley in getting to and from their premises, under a claim of right, for fifteen years continuously, with the acquiescence of Thomas, and on this ground the plaintiff sought to recover under the first count of his dec-

laration. The plaintiff's testimony tended to show that, after the strip of land was left open by Thomas, the owners of some of the lots on the north side of it, used it as they had occasion, as a means of access to the rear of their premises. No evidence was offered by the plaintiff, tending to show that William Wainwright ever, by words, claimed any right to use this strip of land as a way. It is stated in the bill of exceptions that the plaintiff introduced only three witnesses who expressly testified to the use of the alley by William Wainwright, viz: James Mitchell, Carlos Wainwright and Henry H. Bostwick. The case does not show that Mitchell testified to the use of the alley by William Wainwright, but it is stated in the exceptions that Mitchell testified he had no knowledge of William Wainwright using it or claiming a right so to do. Bostwick testified that he knew nothing about the use of the way in question by William Wainwright, except during about the year 1831 or 1832, and that he did not know that William Wainwright then used it under a claim of right, but that he used it as he had occasion to during that period. Carlos Wainwright, the administrator, testified that he knew of his brother William using the way, only by having wood drawn there for his own use ; that he did not know through what entrance to the way the wood came. Other testimony was introduced by the plaintiff, tending to show that the alley in question, from the time it was first opened until it was closed by the erections complained of in 1852, was constantly kept open through from Church street to Markham's alley, that it was used and traveled by all the owners and occupants of the lands and buildings lying on the north side of it, and that Thomas, during his life, was aware of such use and acquiesced therein. The defendant's testimony tended to show the contrary. They also introduced testimony tending to prove that Thomas opened the alley for his own convenience to obtain access to his wash house and other buildings in the rear of his land, and for transporting his fire wood from his wood yard to his tavern house, and tending to prove that Thomas, about the year 1840, stated to William Weston that he owned the alley way, that it was of great value, because the owners of the lots on the north side had no right to use it without paying him therefor. The defendants introduced testimony tending

to prove that in 1852, when Dorr was preparing to erect a barn on the east end of his lot and over the alley in question, Carlos Wainwright, the administrator, heir and agent of the lot, came upon the premises and claimed that the frame which Dorr had prepared, would, when erected, extend four inches on to the Wainwright lot, that on account of such claim the frame was cut off four inches and erected so that the north end of it came exactly upon the north line of the alley, but that Wainwright did not then, nor at any other time, make any objection to the erection of the barn upon and across the alley, as it was erected, and has ever since remained ; and also tending to show that, at the same time, Dorr built a building on the mouth of and over the alley, on Church street, without any intimation from Wainwright that he claimed any right to the alley, or that it should not be obstructed.

It appears to us that the testimony, as detailed in the bill of exceptions, tended to prove the facts as the defendants claimed them to have been proved, indicated by the defendants' requests for instructions to the jury. It is well settled in this state, that each party is entitled to a charge as to the legal result of such a state of facts as he claims exists, and his testimony tends to prove. *Clark* v. *Tabor,* 28 Vt. 222. This brings us to consider what kind of a charge the defendants were entitle to demand, and the charge as given by the court ; and first in relation to the alleged right of private way. The defendants requested the court to charge the jury " that the plaintiff could not recover on the first count of his declaration, unless he maintains a prescriptive right to the way, that in order to do this, he must show a continuous and uninterrupted use of the same for fifteen years by himself, or those under whom he claims, prior to the commencement of this suit, under a claim of right, adverse to the owner, and with the knowledge and acquiescence of the owner." Upon this point the court told the jury if they found that, " after the conveyance of the plaintiff's lot to Wainwright by Thomas, the owners of said lot, together with the owners and occupiers of the lots on the north side of the alley, used this lane in getting to and from their premises, as the plaintiff's testimony tends to show, under a claim of right, for for fifteen years continuously, with the acquiescence of Thomas, the

owners of those lots so using the alley, thereby obtained the right to use the alley as a private way. We think this part of the charge was erroneous and calculated to mislead the jury. They must infer that the court supposed the use of the alley as a private way by the owners and occupiers of other lots would enure to the benefit of the plaintiff. If the plaintiff was entitled to recover on the first count, it must have been on the ground that his grantors had acquired a right to the alley as a private way. The plaintiff's right to the alley, as a private way, depended wholly upon the question whether William Wainwright and his successors, under whom the plaintiff claims, had acquired such right. The court told the jury that by " acquiescence of Thomas the court meant he must stand by and know, or have an opportunity to know that the owners of these lots were so using the way," which language was calculated to strengthen the idea conveyed in a former part of the charge, that the plaintiff would be entitled to recover on the first count if the jury found that the owners of other lots had so used the alley, and had obtained such right of way. The idea is prominent throughout the entire charge upon this branch of the case, that the plaintiff's right of recovery might, to a considerable extent, depend upon the finding of the jury, that the owners of other lots had perfected their right to the alley as a private way, by such use of it as, the court instructed them, would be sufficient for that purpose. It is obvious, we think, that the plaintiff could derive no aid from the use of the alley, as a private way, by the owners or occupiers of other lots. If the owners of other lots claimed any right to the alley as a private way, such claim might have been on entirely different grounds from those on which the plaintiff based his claim under the first count of his declaration. We think the words in the charge, " together with the owners and occupiers of the lots on the north side of the alley," and other words in the charge indicating that it was important for the jury to consider the use of the alley by the owners of those lots, and the acquiescence by Thomas in such use by them, had no application to this branch of the case, and they should have been entirely omitted, leaving the plaintiff's right of recovery on this count to depend upon the merits of his case, as derived from his grantors, and not upon rights

alleged to have been acquired by others. The court should have instructed the jury that, in order to entitle the plaintiff to recover on the first count, they must find that Wainwright and his successors used the alley in getting to and from the plaintiff's lot, under a claim of right, for fifteen years continuously, with the acquiescence of Thomas, and that these facts must appear from testimony, independent of the testimony as to the use of the alley by the owners of the other lots. The court further charged the jury that " to show a want of acquiescence by Thomas, mere language was not sufficient, but some legal steps must have been taken, or he must have placed some actual obstruction in the way, or in some manner must have prevented such use." It is insisted by the defendants that this part of the charge was. erroneous. We are not called on to decide whether the circumstances, under which William Wainwright occasionally used the alley, were such as rendered it advisable for Thomas to institute legal proceedings, or place some actual obstruction in the way, but such were, we think, not the only means by which a want of acquiescence might have been indicated.

The question of acquiescence, by Thomas, was not limited to the inquiry whether he acquiesced in the temporary use of the alley by the plaintiff's grantors, without claim of right on their part, but the true point of inquiry was, whether William Wainwright and his successors used the alley *under a claim of right.* Upon this point, we think the declarations, as well as the acts of Thomas, made and done, during the period of time within which it was alleged that the plaintiff's right to the way was being perfected, were admissible evidence. The defendants put into the case a copy of the deed from Thomas to Strong, dated January 28th, 1839, and they introduced testimony tending to show that Thomas, in 1840, claimed he owned the alley, that it was valuable, and that the owners of the lots on the north side of it had no right to use the alley without paying him therefor. This language of Thomas, as detailed in the exceptions, implies that the owners of those lots could use the alley by paying him for such use. It tended to show that Thomas did not understand they claimed the alley, or would claim a right of way there, except by contract to pay him for such use. In 1840, the time it is

said Thomas made these statements, in respect to his ownership of the alley and as to the use of the alley by the owners of the lots, the plaintiff's grantors had acquired no right to the alley as a private way, by adverse use, and we think the court should have called the attention of the jury to this testimony in connection with the other testimony, upon the question of acquiescence, as tending to show a want of acquiescence on the part of Thomas. The defendants third request called for a charge that if " William Wainwright made no claim of a right of way during his life time, then the fifteen years would not commence running until after his decease." If it be true, as claimed by the plaintiff's counsel, that this request implies that William Wainwright must have expressly asserted such a right, we do not assent to the proposition. It is true that the fifteen years would not commence running until he commenced using the way under a claim of right. But the fact that he made such claim may be proved by his words, together with the use of the alley by him as a way ; or the mere use of the way, if expressly shown to have come to the knowledge of the owner of the soil, will *prima facie* establish the fact that the use was under a claim of right, unless the owner of the soil did not so understand it, and was not bound to so regard it from the nature and extent of the use.

It appears that there was no testimony in the case tending to show that William Wainwright ever, *by words*, claimed any right to use this strip of land as a way, and the testimony did not tend to show a very extensive use of it by him. It was a very important subject of inquiry, on the trial of the case, under the first count, whether William Wainwright ever used the way under a claim of right, or whether his use of it was under such circumstances as one frequently pleads as an excuse for occasionally traveling on the open land of another, without making any claim of a right of way. The defendants' testimony, tending to show that Thomas opened the way for his own convenience, and with the view of selling out rights of way to others over the same, tended to explain the cause of the apparently limited use of the alley by the plaintiff's grantors, and to account for their not asserting, by *words*, any claim of right to the way. If Wainwright did not expressly assert a claim of right to the alley as

a private way, and mere use of the alley by him was relied on to prove that such use was under a claim of right, the circumstances under which he used the alley, and the character and frequency of such use, should be such as would plainly indicate to Thomas that he was using the alley under a claim of right. If William Wainwright did not use the alley under a claim of right, then the plaintiff could not recover on the first count of his declaration, for it was less than fifteen years from the decease of Wainwright to the erection of the obstructions by the defendants' grantors. We think the defendants were entitled to have the jury instructed in regard to this point in the case, and the court should have called the attention of the jury to the testimony bearing upon the question whether William Wainwright ever claimed a right to the way, and whether he used the way under a claim of right. The defendants requested the court to charge 'that, "if the jury find that Carlos Wainwright, administrator and agent of the heirs of his father Samuel Wainwright, who was the heir of William, never claimed any right of way, the plaintiff cannot recover on his first count." The conduct of Carlos Wainwright was important in the determination of this branch of the case. It appears from his testimony that he knew of his brother William using the way, only by having wood drawn there for his own use. In 1840 he became administrator on his father's estate, including the close now owned by the plaintiff, at which time he took possession of it and managed and controlled the same, as administrator, heir and agent for the other heirs until September 1865, a period of twenty-five years. His testimony in the case did not tend to show, nor does it appear that there was any testimony in the case tending to show that he, as administrator, heir or agent of the other heirs, ever used this alley as a private way. He stood by and saw buildings erected on the alley, entirely obstructing the way, and it does not appear there was any testimony in the case, tending to show that he, as administrator, or heir, or that either of the other heirs, ever objected to these obstructions, or that they, or either of them, ever complained on account of their erection. William Wainwright, at the time of his decease, had owned the lot only about eleven years, and at that time, the fifteen years had not run, and he had obtained

36

no right to the alley as a private way. And if Carlos Wainwright, administrator and agent, did not use the way, it would follow that the plaintiff's grantors acquired no right to the alley as a private way. It is insisted by the plaintiff's counsel that the omissions of Carlos Wainwright, as administrator and agent, could not affect the right of the *other owners*, of what is now the plaintiff's lot, in the way in question. But assuming—what is not controverted, and is proved by record evidence in the case—that neither William, nor Samuel Wainwright had obtained a right of private way, at the time of their decease, we must conclude that neither the estate of Samuel Wainwright, nor his heirs, had any right of private way in the alley at the time Carlos Wainwright was appointed administrator on the estate of Samuel Wainwright. If William Wainwright, in his life time, commenced using this alley as a private way, under claim of right, with the acquiescence of Thomas, his administrator, or heirs could, if they chose, continue such use and perfect, or attempt to perfect, a right of private way. The plaintiff claimed his grantors had used the way, under a claim of right, for fifteen years continuously, with the acquiescence of Thomas; and it was just as necessary for him to show, in order to recover on the first count, that the use had continued fifteen successive years, under a claim of right, as it was to show that his grantors commenced using the alley under such a claim.

The rule of law, under which the fifteen years of adverse use would commence running, was applicable to the estate, the administrator and heirs of Samuel Wainwright, if they sought to perfect a right of private way, alleged to have been commenced by William Wainwright in his life time. And the estate of Samuel Wainwright could not, nor could his heirs, perfect that right except by such use of the way, under such claim of right, for the length of time, with the acquiescence of Thomas and his successors, as would have perfected the right, by a continuance of such use by William Wainwright himself. Samuel Wainwright had no vested right of way at the time of his decease. If William Wainwright commenced such use of the way in his life time, his heir, Samuel, and the estate and heirs of Samuel Wainwright, could avail themselves of the expired

portion of the fifteen years, by continuing such use. But it is clear that such right to the way could not be perfected and gained by their *silence* in respect to the way, and their *non user* of it. We are clearly of opinion that the defendants were entitled to have the jury instructed according to this request, and if there was no evidence in the case tending to show that the administrator, or heirs of Samuel Wainwright, continued such use, and actually used the way, under a claim of right, with the acquiescence of Thomas, until a right of way had been perfected, by fifteen years continuous use, from the time such use commenced by William Wainwright, the court should have instructed the jury to lay the first count of the declaration entirely out of the case. The defendants also requested the court to charge that " if the jury find that Carlos Wainwright, being in possession, as the testimony tends to show, when Dorr was building his barn, did make objection as to the four inches the timbers would run on his land, but made no objection to putting the barn across the alley, nor gave any notice to said Dorr that he had any claim there, but suffered Dorr to go on and build the barn without giving any notice of any claim, then the plaintiff cannot recover." It is insisted by the defendants' counsel that Carlos Wainwright and his grantees, should be estopped from asserting any claim against Dorr and his grantees, inconsistent with the conduct of Carlos Wainwright on that occasion.

The interest of Carlos Wainwright, at that time, in the lot now owned by the plaintiff, his agency for the other heirs and owners of the lot, required him to assert his and their claim or right of way, if they had or claimed any such right. He was not at liberty to remain silent in respect to such claim, and allow Dorr to erect the barn, in ignorance of such right or claim of right. It appears that Carlos Wainwright had, at the time of the interview with Dorr, full knowledge that the barn, which Dorr proposed to erect, and was then erecting, would cover and obstruct the entire way. He had the entire management and control of the lot now owned by the plaintiff, from the death of his father to the time the barn was erected, a period of about twelve years, and his relation to the property was such that he must have known, at the time the barn was erected, (if

any body knew anything about it) whether the estate or heir of Sam-uel Wainwright had, or claimed to have, any right of way in the alley in question.  Dorr would very naturally understand from the fact that the protest of Wainwright was. merely against extending the timbers four inches. onto the plaintiff's lot, that Wainwright con-sented to the erection of the barn, so as to cover the entire alley. Wainwright must have understood, from the kind of building Dorr was erecting and the purpose for which he was erecting it, that it would constitute a permanent obstruction to the alley, and conclude further use of it as a way.  We think the conduct of Carlos Wain-wright, as detailed in the bill of exceptions, should estop him from asserting any claim to the alley, as against Dorr and his grantees. Carlos Wainwright, as administrator, had no power to sell or convey the real estate of his intestate, or any interest therein, except by license from the probate court, in the manner and under the regula-tions provided by law.   If a right of private way had been obtained, at the time of the interview between Dorr and Wainwright, the afore-said conduct of Wainwright would not estop the other heirs from asserting any perfected right they had to the alley, unless they authorized or assented to such conduct.   Whether the conduct of Carlos Wainwright, upon that occasion, would operate as an estoppel in pais, as to the alleged right or claim of the other heirs, must depend upon his express or implied authority as their agent.   At the time Dorr was erecting his buildings on the alley, Carlos Wain-wright was agent for the other heirs, and as such agent he had the entire management and control of their title to, and interest in, the lot now owned by the plaintiff.   If the other heirs consented to the erection of the obstructions to the way, they should not be allowed to make further claim to the way as against Dorr and his grantees, or if Carlos Wainwright, their agent, understood from them that they made no claim or further claim to a right of way there, and he acted for them in his interview with Dorr, and, after notice of the obstructions, they did not within a reasonable time object to their erection, their assent to the authority of their agent and to the erection of the obstructions would be implied.   The sufficiency of the testimony to show an express or implied authority of the agent

was a question for the jury to determine from the circumstances of the case under proper instruction from the court.

We think the conduct of Carlos Wainwright, taken in connection with his interest and his agency for the other heirs, was important in several particulars :—1st. It tended to show that the estate of Samuel Wainwright had no right to the alley as a private way.   2d. That neither the estate nor the heirs made any claim of right to the alley as a private way.   3d. As tending to show that, if they ever had, or claimed to have any right of way there, they abandoned it.

We have thus far considered the defendants' request and the charge of the court with reference to the first count of the plaintiff's declaration.   We are next to consider them with reference to the rights of the parties as applicable to the second count.   The defendants requested the court to charge the jury, among other things, that in order to constitute a dedication, there must be an intent to dedicate, an actual dedication by the owner of the land, and an acceptance by the public, and [that, the clearing out of the alley, in the manner and under the circumstances described by the witnesses did not tend to show an acceptance by the public.   Two questions, at least, were presented by the testimony bearing upon this branch of the case :— First, was the alley dedicated to public use by Thomas and accepted by the public as a highway ; Second, did Thomas open the alley for the use of the public, and declare it should be kept open for a public way, and thereby induce individuals to purchase his lands adjoining the alley, upon the faith of the alleys being appropriated to the public use ; The defendants' request was sufficient to call the attention of the court to the question, whether there had been such dedication by Thomas and acceptance by the public as would give the public the right of way, independent of the rights of individuals alleged to have been acquired by them by their purchasing the adjoining lands.   The charge of the court submitted the two questions as one entire proposition, but gave no specific instructions as to either proposition which the charge embraced.   The charge, so far as it relates to the first question, viz : dedication by Thomas and acceptance by the public, appears to have been as follows : That a man has a right to throw open his grounds, and dedicate them to public use, that in

order to make a dedication of a public highway, the intention of the owner of the land to dedicate it to public use, must be manifested so as to make it clear to all persons making use of the way, what that dedication is, that if the way was opened for the purpose of a public way, and had been used by the public as such, Thomas would have no right to close it. We think the defendants had the right to a more specific charge upon this branch of the case. The plaintiff introduced testimony tending to show that the filth in the alley was cleared out by order of the selectmen, and relied upon this evidence as tending to show an acceptance of the alley by the public as a highway. The defendants' testimony tended to prove that the clearing out of the filth in the alley was done by order of the selectmen as a sanitary measure solely, the same as was done in the other alleys in the village, and two witnesses, who were selectmen at the time the alley was cleared out, and before and afterwards, testified that they never heard the alley was a public highway. It does not appear that there was any direct testimony tending to show that the public had incurred any expense in making or repairing the alley as a road. The charge states the general proposition as to dedication, and the aspect of the case as presented on the assumption that the selectmen cleared out the filth in the alley, for the purpose of opening it as a highway, but the jury should have been instructed that if they found the clearing out of the filth in the manner described by the witnesses, was a sanitary measure solely, then such acts of the selectmen would furnish no evidence of dedication by Thomas, or acceptance of the alley as a public highway. To render a dedication to public use binding, it is necessary only that there be some act of dedication, on the part of the owner of the land, but there must be something equivalent to an acceptance on the part of the public. *State* v. *Trask*, 6 Vt. 355 ; *Morse* v. *Rano et al.* 32 Vt. 600. The charge, considered in regard to an acceptance of the alley by the public, as a highway, was calculated to convey to the jury the idea that mere use of the alley by the public as a way, would constitute a sufficient acceptance of it by the public, without regard to the circumstances under which the public used the alley, the character of such use, or the length of time such use had been continued. The

idea thus conveyed was erroneous. It appears that the entire charge in respect to the second count of the declaration was with reference to the aspect of the case as presented on the assumption that Thomas dedicated the alley to public use, or declared his intention to so dedicate it, by opening the alley and by selling his lands adjoining it, to persons who acted, in making such purchases, upon the faith of the alley's being appropriated to the public use.

The judge, after stating in his charge that a man has a right to throw open his grounds and dedicate them to public use so as to give to all adjoining proprietors who should purchase ground of him, adjoining on the way, and all other persons, the right to use it, and that persons acting upon such dedication, by buying lands of him upon such a way, have a right to use the way, says, (by way of illustration) " as for instance if a man sells land bounding it upon such way or street. That it was not necessary that the grantor should so describe the way in his deed, but that if, after a way has been thrown open to the public by the owner, he conveys land adjoining, and in describing the land conveyed by distances, he brings the land to such a way, though he says nothing about it, then he would be bound to keep the way open for the accommodation of the purchasers." We think the charge, with reference to this branch of the case, was directly calculated to mislead the jury. If the jury understood that the case supposed by the judge must embrace all the essential facts as detailed by him in a former part of his charge, and that their finding the fact that there had been such dedication and acceptance, must be based upon such a state of facts as the court first told them would be required, then the charge, taken in connection with what it states near the close of it, would be well enough so far as it goes. But if the jury regarded the judge's illustration, as its language would seem to imply, as embracing all he meant by what he had just before stated in his charge, and acted upon such idea, they were misled by it. The judge, next preceding his illustration, told the jury that in order to make a dedication of a public highway, the intention of the owner of the land to dedicate it to public use, must be manifested so as to make it clear to all persons making use of the

way, what that dedication is, and then told them, in substance, that the intention of the owner of the land, to dedicate it to public use, would be sufficiently manifested, by his selling land and bounding it upon such way. The jury would very naturally understand from this part of the charge that, if after a way has been thrown open to the public by the owner of the land, he conveys land adjoining, though he says nothing about the way, and the purchaser knows nothing about it, he would be bound to keep it open for the accommodation of the purchaser, without regard to the questions whether the public had accepted the way, or whether the purchaser was induced to make the purchase upon the faith of the alley's being appropriated to the public use, or whether the price paid for the land was affected by such way. It is true the court in the latter part of the charge told the jury that "if the way was opened for the purpose of a public way, and has been used by the owners and occupiers of the land adjoining and the public as such, Thomas would have no right to close it." But construing this clause, as referring to the court's illustration of the mode by which a right of way might be acquired by the purchaser of adjoining land, as we think the jury understood it referred, it was not calculated to correct the erroneous idea conveyed to them in the other parts of the charge. The court gave the jury no instructions in respect to what would constitute such a dedication by Thomas of the land, and such acceptance of the way by the public, as would render the dedication irrevocable as against the public use, or against its use by the owners and occupiers of the adjoining land. Nor did the charge, as we understand it, make the right to the way, of the owners and occupiers of the adjoining lands, depend upon their having purchased the adjoining lands, upon the faith of a dedication of the alley by Thomas, to the public use. If the public acquired no right to the alley as a public way, by dedication by Thomas, and acceptance and use of the alley by the public, or by adverse *user* alone, (which latter mode of acquiring the right would require a continuous use for fifteen years) then the inquiry would arise, whether there was any thing in the circumstances under which the owners of the adjoining lands purchased them, which should bind

Thomas and his successors to keep the alley open, as a public highway, for the use of the owners and occupiers of those lands. This question would depend upon the understanding between Thomas and the purchasers of such adjoining lands. Did Thomas give the purchasers of those lots adjoining the alley to understand that the alley had been opened and appropriated, or that it had been opened and would be appropriated to the public use, for the benefit of those who should purchase and become owners of the lands adjoining the alley, as a public way; and did they purchase such adjoining lands, relying upon the faith of such dedication? If so, then neither Thomas, nor his successors, would have a right to close the alley, so long as the owners of those lots should need the way. But if Thomas opened the alley for his own convenience, or with the view of selling out rights of way to others, over the same, then the purchasers of the land adjoining the alley, would, by such purchase, acquire no right to the alley as a public way, though the alley was open at the time of such purchase, and the purchaser supposed it would be appropriated to public use as a highway. We think the court should have called the attention of the jury to the different aspects of the case as presented by the testimony, and the instructions of the court to the jury, should have been sufficiently definite to direct the jury to the particular facts they must find in order to entitle the plaintiff to their verdict.

The only remaining question which we deem necessary to decide is, whether this action could be maintained against these defendants, without previously giving them notice to remove the obstructions to the way. We regard it as settled by the authority of well adjudged cases, that, when the action is brought against the grantee of one who has erected obstructions, it cannot be maintained without previous notice to the defendant to remove them. PENRUDDOCK's case, Coke's Rep. Abrdg. 176; *Woodman* v. *Tufts*, 9 N. H. 88; *Johnson* v. *Lewis*, 13 Conn. 303; *Pillsbury* v. *Moore*, 44 Maine 154; *McDonough* v. *Gilman*, 3 Allen 264. It is not claimed that these defendants erected the obstructions, but they simply occupied the premises as they purchased them. It is clear, upon principle as well as authority, that this action could not be maintained, without proof of pre-

vious notice to these defendants to remove the obstructions complained of, and we think the defendants were entitled to have the jury instructed according to their seventh request. The remark of Wainwright to Willard in relation to building the fence across the alley, we do not regard as sufficient notice to these defendants. It is urged by the defendants that if they were in the adverse possession of the way, when the plaintiff purchased of Sweet, then the plaintiff could not recover. Upon this point we express no opinion. The judgment of the county court is reversed and the cause remanded.