WILLIAM MARTIN, *Appellee*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant*.

No. 16,207.

SYLLABUS BY THE COURT.

1. NUISANCE—*Knowledge of Wrongdoer—Injury to Stock—Notice and Request to Abate Unnecessary to Create Liability.* Where a railroad company operates a railroad under a lease which requires it to maintain the roadbed, track, fences and right of way in good repair, and prior to the execution of the lease there had been an excavation made upon the right of way and a barbed wire fence constructed in such a manner as to make the place dangerous to stock pasturing upon the adjoining land, such danger amounting to a nuisance, of which the lessee had actual knowledge, and stock grazing upon the adjoining land are injured on account of such nuisance, no notice and request to abate the nuisance is necessary to make the railroad company liable for the injuries received by the stock.

2. EVIDENCE—*Deposition Taken but Not Filed—Application for Order to Produce at Trial.* Where a party takes a deposition upon notice as provided by the statute, but does not file it in court, it is not error for the court to refuse to order the deposition to be brought into court, where the application for such order is made for the first time during the progress of the trial.

Appeal from Harper district court; PRESTON B. GILLETT, judge. Opinion filed December 11, 1909. Affirmed.

*T. A. Noftzger, H. B. Low,* and *C. O. Blake,* for the appellant.

*E. C. Wilcox,* for the appellee.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced in the district court of Harper county by William Martin against the Chicago, Rock Island & Pacific Railway Company to recover the value of a horse alleged to have been killed upon the right of way of the defendant in that county. The railroad, including its fencing, was constructed by the Choctaw & Northern Railroad Company. The road was subsequently sold to the Choctaw, Oklahoma & Gulf Railroad Company, and by it leased, about April, 1905, to the defendant, since which time the defendant has operated the road under such lease. There was a stipulation in the lease binding the defendant to maintain and repair the road, including the right of way, fences and all the other equipments and appurtenances pertaining to the road. When the railroad was originally constructed, which was several years before the injury of which the plaintiff complains occurred, a deep excavation was made on and along the right of way, extending almost to the adjoining property, leaving a high and precipitous embankment upon the right of way between the excavation and the outer line of the right of way. The roadbed was inclosed with a barbed wire fence, which was constructed at the place where the horse was killed upon the right of way and in the excavation, and so near to the embankment as to leave between the fence and the embankment a narrow passageway, too narrow in places for stock the size of horses or cattle to pass. The passageway was of unequal width, being in some places three feet or more and gradually growing narrower to two feet and less in other places. The property adjoining this excavation along the right of way was used as a pasture, and was in the possession of the plaintiff, who occupied it as a tenant. His horse, while running in this pasture, wandered into this narrow passageway, and in attempting to force himself through was cut and lacerated by the barbed wire fence until he bled to death.

The first complaint made by the defendant is the refusal of the court to sustain its motion to compel the plaintiff to make his petition more definite and certain in several particulars. The ordinary and general office of a motion of this kind is to require the plaintiff to plead so that the defendant will be advised of the general character of the plaintiff's cause of action, and be thereby enabled to prepare intelligently to defend against it. In this case the defendant, in the very nature of the situation, must have been as familiar with the facts called for by its motion as the plaintiff. It is evident that the motion was not intended to require the plaintiff to state additional facts in the petition not already known to the defendant, or which would aid it in the preparation of its defense; apparently it was to cause all the facts upon which the defendant thought the plaintiff must rely to be stated in the petition, so the action could be settled upon a general demurrer. In many cases this is a very satisfactory way to settle contested legal questions involved in a lawsuit, and the court might well have sustained the motion for that purpose in this case, but we are unable to say that it was error to refuse to do so.

The real question upon which the defendant apparently relies and which it seriously urges here is that the place where the horse was killed is a nuisance; that it was constructed by the defendant's grantors; that the subsequent maintenance of this nuisance by the defendant, with full knowledge of its dangerous character, does not alone make it liable for damages occasioned thereby. It is insisted that before the defendant can be made liable express notice of the existence of the nuisance and a request to abate it must be given. The petition does not aver such a notice and request, and it was demurred to for that reason, but the demurrer was overruled. The evidence did not establish such a notice and request, and a demurrer to that was overruled.

The court instructed the jury in substance that the maintenance of the nuisance, with knowledge of its

dangerous character before the injury, was sufficient to make the defendant liable. This instruction is said to be erroneous. The defendant cites a long line of eminent authorities in support of its contention, commencing with *Penruddock's Case* (Eng. Com. Pl. [1598], Coke's Rep., vol. 3, p. 205; part 5, p. 100*b*), of which the supreme court of Michigan said: "It has antiquity on its side and is therefore entitled to all the consideration and weight that time can give to an adjudication as a precedent for other courts to follow." (*Caldwell v. Gale*, 11 Mich. 77, 83.) The defendant further cites: *Philadelphia & R. R. Co. v, Smith*, 64 Fed. 679; *Central Trust Co. v. Wabash, St. L. & P. Ry. Co.*, 57 Fed. 441; *Groff v. Ankenbrandt*, 124 Ill. 51; *Ahern v. Steele et al.*, 115 N. Y. 203.

These are strong cases, but there are many which announce the contrary doctrine. In the case of *Union Trust Company v. Cuppy*, 26 Kan. 754, this precise question was presented to this court. The trial court gave an instruction to the jury of which complaint was made. The material part of the instruction is copied in the opinion of that case, and reads:

"And now, with particular reference to the defendant, the Union Trust Company, you are instructed that, while it may not have constructed the culvert in question, it would still be liable for any damage occurring during the time the said trust company had charge of the road, occasioned by its wrongful construction, if you find that prior to such injury the said company had actual knowledge that the culvert in question was constructed in such a way as to overflow and flood the land above said culvert, and knowing such fact, still maintained said culvert in such condition. But without this knowledge the Union Trust Company would not be liable.

"It is not necessary, in order to hold defendant, the Union Trust Company, liable for the damage claimed to have been sustained in 1877, that any request should have been made by plaintiff to said trust company to remodel said culvert. All that would be necessary would be for plaintiff to show that defendant, the trust company, knowing the damage likely to be occasioned

by the culvert, permitted it to remain in such condition." (Page 767.)

The court said: "This instruction, we think, is correct." (Page 767.) The court further said:

"It is also urged that the Union Trust Company was entitled to express notice of the insufficiency of the culvert. We do not think that they were necessarily entitled to such notice. Actual knowledge of such insufficiency, we think, is all that was necessary; and that they had actual knowledge was abundantly shown. That actual knowledge in such cases is sufficient is sustained by abundant authority." (Page 768.)

In the case of *Caldwell v. Gale,* 11 Mich. 77, the court used the following language:

"Any one who upholds and sustains a private nuisance, to the injury of another, is in law answerable for the injury done to such person. This is admitted to be law by all the cases, and is denied by none, with this qualification, viz., that the injured party give notice to the party sustaining the nuisance when he did not also create it, of the injury, and request its removal. We are not aware of any case holding it necessary to give such notice to the author of the nuisance before bringing an action against him. He can not claim it. It is therefore a right, if it be a right at all, pertaining to his grantee. Now, why should there be this difference between one who erects a nuisance on his own land, and his grantee, who afterward sustains and upholds it? It is said defendant may not have known that the dam was injurious to the plaintiff, or that his rights were impaired by it. The same may be said of the author of the nuisance; and if such a plea is not good in his mouth why should it be in that of his grantee? The wrong is none the less a wrong, so far as it regards the injured party, because the wrongdoer intended no injury. Why is want of notice no excuse when coming from the author of the nuisance? Because it is a fundamental principle of law that no man shall so use his own property as to injure another, by encroaching on his rights. We know of no exception to this rule, unless it be the one in question; and we see no reason why it should not and does not apply with all its force as strongly against the grantee as his grantor." (Page 84.)

In the case of *Pinney v. Berry*, 61 Mo. 359, the court, after discussing the authorities upon this point, said:

"The better opinion, however, seems to be that, in order to maintain an action for damages resulting from a nuisance on defendant's land, where such nuisance was erected by a previous owner before conveyance to defendant, it is necessary to show that before the commencement of the action the defendant had notice or knowledge of the existence of the nuisance."     (Page 365.)

In the case of *Grigsby v. Clear Lake Water Co.*, 40 Cal. 396, one clause of the syllabus reads:

"A party who continues a nuisance but is not the original creator of it is entitled to notice that it is a nuisance, and a request must be made, that it may be abated, before an action will lie for that purpose, unless it appear that he had knowledge of its hurtful character."

The reason given for the rule that notice and a request to abate must be given to one who becomes the owner of a nuisance which was constructed by another is that such a person may be ignorant of the character of the thing denominated a nuisance, and that a notice and request to abate would place him upon the same ground as the original wrongdoer. If he is not ignorant, the reason for giving notice fails and the rule disappears.

In this case the evidence shows that the defendant's knowledge of the nuisance in question was equal to or better than that of the plaintiff. The fence, the excavation, the embankment and the narrow passageway between the embankment and the fence were all on the right of way, only a few feet from the railroad track. The section foreman whose duty it was to keep the track, fence and right of way in proper repair passed and repassed this spot frequently, and personally examined the passageway and promised to have it fixed so that stock could not enter it. If the rule contended for by the defendant were a new question in this state we would without hesitation decline to apply it to

the facts here presented, and certainly we feel no disposition to modify or limit the position already taken by this court. Notice of, and a request to abate, the nuisance was unnecessary in this case; actual knowledge of its existence was sufficient.

The attorney for the plaintiff, upon notice under the statute, took at his office before his own stenographer, who was also a notary public, the deposition of a witness who resided in Colorado, the defendant's attorney being present. When the evidence of the witness was transcribed it was not such as the plaintiff's attorney expected and he did not have it filed in court. Upon the trial the stenographer was called upon to testify and she related the facts about this deposition. The defendant requested the court to order the deposition to be brought into court, which it declined to do. We think the conclusion of the court was correct. The deposition was not taken by the stenographer as an officer of the court, like a commissioner would have been. The court had no power or control over the paper. There was nothing it could do. Besides, there was an abundance of opportunity under the statute to have enabled the defendant to obtain the evidence. Every deposition intended to be read must be on file at least one day before the day of trial. (Civ. Code, § 361; Gen. Stat. 1901, § 4809.) An examination of the papers filed in the case would have shown the absence of this deposition, when an application for a continuance could have been made, which under the facts here shown should have been granted, and the deposition of the witness could have been obtained if the one already taken were not produced. No doubt an application for a continuance made upon the trial when the order was requested would have been granted under these circumstances; therefore the substantial rights of the defendant were not injured by such refusal, and error was not committed thereby.

The disposition of the main question presented by the defendant disposes of the other questions presented, so that they need not be considered. The judgment is affirmed.