## CORBY v. RAMSDELL et al.
### No. 262.

Circuit Court of Appeals, Second Circuit.
April 13, 1931.

702

**L. HAND, Circuit Judge, dissenting.**

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for appellants.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

The question before us is whether the respondents, owners of land under water on the easterly side of the Hudson river, should be held liable for damages sustained by libelant's yacht Robaliss III as a result of her striking a submerged rock or rocks off Dennings Point while she was proceeding from New York City to Beacon.

The rocks were a part of an old stone abutment constructed by a railroad company on water lots which it acquired from the state of New York prior to 1870. A series of these abutments extended out from the eastern shore of the Hudson connected by stringers. A pier was to be built over the abutments for the purpose of running cars down to car floats on the river and thus transferring them to various terminals in New York City. But the pier was never completed, and the enterprise proved a failure. In 1872 a mortgage covering the property was foreclosed and the uncompleted pier was sold on foreclosure to Homer Ramsdell, to whose rights the respondents succeeded in 1894, as trustees under his will. The cribs holding the rocks which formed the abutments that originally stood about four feet above the level of the water at high tide fell into decay from the action of the elements, and the rocks lay in the bottom of the river and some of them were just visible above the surface of the water at low tide. The abutment farthest from the shore lay about twenty-five feet inside the channel as marked on the government chart. The trustees who held the title to the land under water and the dilapidated abutments never used them in any way and never repaired or marked them.

Libelant's yacht was about 70 feet long and drew 4 feet of water. She was in charge of a master who had never been up the Hudson but twice, the last time about ten years before the accident. He testified that he was steering by landmarks and not by compass and he was not using a chart in the unfamiliar waters, though he claimed that there was one on board. He said that he was running 20 miles an hour at the time of the accident and that his vessel had a speed of 24 miles. But he doubtless was going faster, for in the two hours before he hit the obstruction he had run 52 miles, and he was going at such a speed when he struck that in spite of the collision he went on 150 yards before the yacht finally came to a stop.

We think there can be little doubt that, when the respondent-trustees allowed the crib which held the stone abutments to fall into decay so that the rocks were scattered on the bottom of the river, they were maintaining a public nuisance. Of the existence of this nuisance they must be regarded as having had

notice, for the testimony shows that the trustee, Henry P. Ramsdell, saw the abutments built by the railroad; that they originally stood about four feet above high water mark and that finally, by the action of the elements, they had become submerged. In such circumstances, the respondents were liable for obstructing a navigable stream and maintaining a nuisance therein to any person who suffered injury thereby. The fact that the railroad had obtained a grant to construct a pier did not permit it, or its successors, to maintain the pier in a dilapidated condition, unmarked and a danger to navigation. One who maintains a public nuisance on his land, of the existence of which he has notice, or should have notice, is liable for resulting damages to the public. Klepper v. Seymour House Corp., 246 N. Y. 85, 158 N. E. 29, 62 A. L. R. 955; Kilmer v. White, 254 N. Y. 64, 171 N. E. 908; Ahern v. Steele, 115 N. Y. 203, 22 N. E. 193, 5 L. R. A. 449, 12 Am. St. Rep. 778; Edwards Ltd. v. Birmingham Navigations, [1924] 1 K. B. 341; Barker v. Herbert, [1911] 2 K. B. 633; Leahan v. Cochran, 178 Mass. 566, 60 N. E. 382, 53 L. R. A. 891, 86 Am. St. Rep. 506; Hynes v. Brewer, 194 Mass. 435, 80 N. E. 503, 9 L. R. A. (N. S.) 598; Fuller v. Andrew, 230 Mass. 139, at page 146, 119 N. E. 694; Bixby v. Thurber, 80 N. H. 411, 118 A. 99, 29 A. L. R. 175; Arpin v. Bowman, 83 Wis. 54, 53 N. W. 151; City of Newport v. Schmit, 191 Ky. 585, 231 S. W. 54.

■ It is contended that the respondents ought not to be held liable for damages arising out of the obstruction existing on their land under water because they never received any request to abate the nuisance. This theory of the law of nuisances arose after the decision in Penruddock's Case, 5 Coke, 205, and was based upon the idea that a successor in title could not know that structures found upon his land when he purchased it which encroached upon his neighbor's land were not there because of a grant by or, in any event, with the acquiescence of his neighbor. Accordingly it has been held that the grantee of one who has set up a nuisance is only liable in case he has adopted it for his own use or has been requested to remove it and failed to take action. Various decisions have confused this rule, really applicable only to private nuisances, with the law relating to public nuisances. Wenzlick v. McCotter, 87 N. Y. 122, 41 Am. Rep. 358; Dodge v. Stacy, 39 Vt. 558; Pillsbury v. Moore, 44 Me. 154, 69 Am. Dec. 91; Philadelphia & R. R. Co. v. Smith (C. C. A.) 64 F. 679, 27 L. R. A. 131; Grigs-

by v. Clear Lake Water Co., 40 Cal. 396; Edwards v. Atchison, Topeka & Santa Fe (C. C. A.) 15 F.(2d) 37. But no one can acquire a right to maintain a public nuisance either by grant or by prescription, and a landowner who maintains one is liable for damages caused thereby if he has had notice of its existence in time to abate it or to warn the public. Casement v. Brown, 148 U. S. 615, 13 S. Ct. 672, 37 L. Ed. 582; Atlee v. Packet Co., 21 Wall. 389, 22 L. Ed. 619; Philadelphia, Wil. & Balt. R. Co. v. Phil. & Havre de Grace Steam Towboat Co., 23 How. 209, 16 L. Ed. 433; Williams v. Edward Gillen, etc., Co. (C. C. A.) 258 F. 591; Harrison v. Hughes (C. C. A.) 125 F. 860.

Even in the case of a private nuisance, notice to a landowner has been held sufficient to charge him with liability, though there has been no request to abate. Caldwell v. Gale, 11 Mich. 77; Martin v. Chicago, R. I. & P. Ry. Co., 81 Kan. 344, 105 P. 451, 27 L. R. A. (N. S.) 164.

■ The master of the Robaliss III testified that on the day after the accident he found a heap of small stones about one foot in diameter when examining the place where his boat seemed to have struck. From the survey of damage it is evident that the keel of the yacht struck the stones about amidships and that there was a sufficient depth of water even then so that she passed over them and ran under her own power 150 yards beyond. Though the obstruction was unlawful and the respondents were liable for allowing it to remain in public waters without any mark to warn navigators, yet the libelant can only recover half damages if the negligence of his master contributed to the catastrophe. The fact that the respondents were permitting a nuisance to remain on their property would not prevent them from availing themselves of the defense of contributory negligence. McFarlane v. City of Niagara Falls, 247 N. Y. 340, 160 N. E. 391, 57 A. L. R. 1.

■ The libelant was entitled to the whole stretch of navigable water for the operations of his yacht, and the consideration that he was outside the channel, as surveyed by the government, would not in itself excuse the respondents for allowing the waters to be incumbered by a broken-down pier or for neglecting to mark the obstruction in such a way as to give warning to navigators. Red Star Towing & Transportation Co. v. Snare & Triest Co. (C. C. A.) 194 F. 672; Red Star Towing & Transp. Co. v. Woodburn (C. C. A.) 18 F.(2d) 77.

But if the master of the Robaliss III had looked at the chart he would have seen that the waters in which he was navigating had a depth of only from 3 to 8 feet at low tide and that there was something resembling a pier running out into the river westwardly from Dennings Point. It is true that, if he saw nothing above the water, he might reasonably have assumed that the pier had been removed. But, if he had been a prudent navigator, he would not have felt assurance that all the stones in the foundation had been eradicated and that it was safe to proceed at 26 miles an hour over a bottom so shallow that at low tide a vessel drawing 4 feet of water could not pass over it at all. Casement v. Brown, 148 U. S. 615, 13 S. Ct. 672, 37 L. Ed. 582, relied on by appellee, does not preclude a finding of contributory negligence in the present case. In that case there was nothing to show the person who suffered damage that he was navigating in a dangerous place. Here there was the unexamined chart showing the shallow water and the pier.

The accident happened about 4:30 o'clock in the afternoon, some two hours before the tide would be at the flood, and the difference between low and high tide at Dennings Point was only 3 feet. The bow of the yacht, speeding along at 26 miles, would be up in the water, while her keel aft of midships would be well down. It is hard to see how the Robaliss III could traverse the flats at all under such circumstances, and it was negligent for her master to go rushing along through waters with which he had no real familiarity. If he had taken pains to look at a chart and observe the depth of the water in the vicinity, it is incredible that he would have chosen the course that he took instead of keeping out in the deep channel where navigation was perfectly safe. In such cases a court of admiralty will divide the damages (Atlee v. Packet Co., 21 Wall. 389, 22 L. Ed. 619), while a court of law will deny any recovery because of contributory negligence (Steiner v. Mississippi River Power Co., 194 Iowa, 647, 190 N. W. 9, 25 A. L. R. 1551).

The evidence shows that the broken-down pier was a well-known danger. Very likely the master of the Robaliss III was not chargeable with such a knowledge of the location of rocks and obstructions as the pilot of a commercial vessel would be. Atlee v. Packet Co., supra. The S. W. Morris (D. C.) 59 F. 616. But we hold that he was chargeable with such knowledge as the examination of a government chart would have given him, and that, in the light of the infor-

mation that he might readily have obtained, he was not justified in going outside of the channel and running at a high rate of speed through very shallow water where the slightest obstruction was likely to wreck his vessel.

The decree is modified, and the cause remanded, with direction to grant a decree to the libelant for half damages.

L. HAND, Circuit Judge (dissenting).

The libelant accepted the risk of striking chance stones upon the flats when he drove his boat over the flats. He did not accept the risk of striking an abandoned abutment, for he had no reason to suspect its presence, not being chargeable with local knowledge of those waters. The effect of my brothers' decision is to extend his acceptance to a different risk, and that in effect is to impose a penalty upon him. One may disapprove the driving of such craft in such places at such speeds, but I submit that in a civil suit that disapproval is immaterial. The question is whether he had any cause to expect such an obstacle, not obstacles of other sorts. It seems to me that the decree below was right.