## PHILADELPHIA & R. R. CO. v. SMITH.

(Circuit Court of Appeals, Third Circuit. November 26, 1894.)

### No. 2.

**1. NUISANCE—CONTRIBUTORY NEGLIGENCE.**

An embankment had been erected by defendant's lessor in such a position as to prevent the flow of water through a small run, fed by springs, on plaintiff's land, and a ditch had been constructed to conduct such water along the embankment, and into a river. *Held*, in an action for damages to plaintiff's land, caused by defendant's allowing the ditch to become obstructed (the defendant contending that such damages were caused, in whole or in part, by plaintiff's failure to keep the run on his own land in proper condition), that the doctrine of contributory negligence had no application, but each party was responsible for the damage caused by his own conduct.

**2. SAME—LIABILITY OF PURCHASER.**

Where the owner of land erects upon it a structure which is a nuisance to the owner of adjoining land, a purchaser or lessee from him who erects the nuisance is not liable for continuing to maintain the offending structure, without notice from the adjoining owner, and a request to remove it.

In Error to the Circuit Court of the United States for the District of New Jersey.

This was an action by Abraham Smith against the Philadelphia & Reading Railroad Company to recover damages for a nuisance. On trial in the circuit court, the plaintiff had a verdict. A motion by defendant for a new trial was granted, unless the verdict was in part remitted. 57 Fed. 903. Judgment was entered for plaintiff. Defendant brings error.

John R. Emery, for plaintiff in error.

R. V. Lindabury, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and WALES, District Judge.

DALLAS, Circuit Judge. On May 14, 1879, the Delaware & Bound Brook Railroad Company leased its railroad to the Philadelphia & Reading Railroad Company, plaintiff in error, and the latter company entered under the lease. Long prior to the demise, an embankment forming part of the roadbed had been so constructed as to prevent the flow of water through a small run, fed by springs, on

land of the plaintiff below; and a ditch had been dug along the foot
of the embankment to conduct the water to the Raritan river and
there discharge it. The first count of the declaration avers that
this ditch "fails altogether to drain the water of said springs from
the plaintiff's said farm"; and, on behalf of the plaintiff, evidence
was adduced to show that the defendant allowed it to become filled,
and that, although the plaintiff had cleaned his spring run out once
after the railroad ditch was dug, such cleaning proved to be useless,
because the spring run had no outlet. This was contradicted by
the witnesses for the defendant, and upon the question thus pre-
sented the court instructed the jury that, if any portion of the
plaintiff's damage was due to his failure to keep the run in proper
condition on his own land, "he could not recover for such portion";
"that if he, by any act of omission or commission, permitted the
ditch upon his own property to become so clogged up or filled up
that the water, instead of going down to the property of the defend-
ant, went out over his own property, soaked through the ground,
and over the top of it, so as to render it acid or boggy, for that part
of the damages he cannot recover." The defendant was not satis-
fied with this, but asked for further instruction "that the plaintiff
was bound to keep open his spring-run ditch upon his own land,
and if the situation of the ditch was such that, from freshets or other
causes, the ditch became filled, he cannot recover, if his negligence
to keep the ditch open contributed to his injury." This point was
evidently framed upon the theory that if the plaintiff's neglect had
caused him any damage, he could not recover at all,—not even for
that which had been caused wholly by the defendant; and it was
disaffirmed upon the ground that failure to keep his spring run
open would not bar his right of recovery to the extent of any damage
which actually resulted solely from the defendant's wrong, even if
the plaintiff had been additionally damnified through his own want
of care. In this there was no error. The doctrine of contributory
negligence has no application. One who decisively contributes to
bring a mischief on himself may not impute it to another, but he
who does hurt to his neighbor cannot escape liability for the dam-
age thereby occasioned by showing that the person he has injured
has also sustained other or additional damage of the same character
through separate acts or omissions of his own. In such cases, each
party is chargeable with the consequences of his own conduct, and
neither of them is at liberty to shift his burden to the shoulders of
the other. This view of the law was appropriately applied by the
court below, and therefore the second assignment of error is not sus-
tained.

The remaining assignments relied upon relate to the cause of
action set out in the second count. That count alleges that the
embankment already mentioned diverts the ancient course of the
water of the Raritan river, in times of freshet, to the injury of the
plaintiff's land, and this allegation is to be now accepted as true.
It also avers that the defendant became the lessee and possessor of
the railroad after the embankment had been erected, but "has since
continued, used, and maintained it," and of these facts there is no

doubt. It further alleges, however, that the plaintiff "requested the said defendant to remove the said obstruction," but of such request no proof whatever was made or evidence offered, and thus arises the more important question in the case, viz. is the appellant liable, without request or notice, for the damage caused to the appellee by the existence of this embankment, although the appellant did not erect it, and has maintained and used it only as a part of its roadway?

From the report of Penruddock's Case, 5 Coke, 101, it appears that the house of the defendant had been built by his feoffor on his own freehold, but so near to a house which was afterwards, and before suit brought, conveyed to the plaintiff, that the former discharged water upon the latter. The plaintiff brought his action *quod permittat*, and one of the points presented and considered was whether the action would lie against the feoffee of him who had erected the house which caused the nuisance, and it was held by the king's bench, affirming the judgment of the common pleas, that it would, but only after request for abatement. The court said:

"And if it be not reformed after request made, the quod permittat lies against the feoffee, and he shall recover damages if he do not reform it; but without request made it doth not lie against the feoffee, but against him who did the wrong it lies without any request made, for the law doth not require any request to be made to him who doth the wrong himself."

The judgment in the Case of Rolf, which was decided about 15 years earlier, seems to have been to the same effect, but the Penruddock Case has, for about three centuries, been regarded as the leading one on the subject, and as settling the law of England with respect to it. Pollock on Torts, which was first published in 1886 or 1887, has already passed through three editions, and in the latest of these its eminent author still retains his citation of that case as authority for the proposition, which he lays down without hesitancy or qualification, that "if one who has erected a nuisance on his land conveys the land to a purchaser who continues the nuisance, the vendor remains liable, and the purchaser is also liable if, on request, he does not remove it." If it had been deemed necessary, other authorities might have been added in support of this statement, and among them the case of Jones v. Williams, 11 Mees. & W. 176, in which Baron Parke followed the Case of Penruddock, and quoted with approval Jenkins' Sixth Century, case 57 (where he assumes the Penruddock Case to have been referred to), for this recital of the law:

"A. builds a house so that it hangs over the house of B., and is a nuisance to him. A. makes a feoffment of his house to C., and B. a feoffment of his house to D., and the nuisance continues. Now D. cannot abate the said nuisance, or have a quod permittat for it, before he makes a request to C. to abate it, for C. is a stranger to the wrong. It would be otherwise if A. continued his estate, for he did the wrong. If nuisances are increased after several feoffments, these increases are new nuisances, and may be abated without request."

It is not necessary to make any further reference to the English Reports. The industry of appellee's counsel has not enabled him to show that the doctrine maintained in the cases we have mentioned

has been discarded by the English courts, and it is entirely safe to assume that it has not been. It is, however, contended that it has been departed from, or materially qualified, in this country, and especially in the state of New Jersey, where the subject-matter of this controversy is situated. If this was so, it would, we think, be unfortunate; for, in our opinion, the requirement of notice in cases of this sort imposes no hardship upon plaintiffs, and is, in fairness, due to defendants. A grantee should not, of course, be held responsible for the creation of an injurious structure by his grantor, and, if not notified of objection, he may be ignorant of its harmful nature, or may legitimately presume that it is voluntarily submitted to; and therefore a plaintiff ought not to be permitted to recover damages for injury alleged to have been done to him by the maintenance of a pre-existing condition during a period when, with full knowledge of his hurt, he had made no complaint of it, nor requested the removal of its cause. As was said in Central Trust Co. of New York v. Wabash, St. L. & P. Ry. Co., infra, "The subject has been fully considered by the courts both in England and in this country," and with the same result, viz. "that, where the party was not the original creator of the nuisance, he must have notice of it, and a request must be made to remove it, before any action can be brought." There may be some divergence in expressions of different judges, but that this is a correct statement of the effect of the decisions there can be no doubt. Central Trust Co. of New York v. Wabash, St. L. & P. Ry. Co., 57 Fed. 441; Plummer v. Harper, 3 N. H. 88; Curtice v. Thompson, 19 N. H. 471; Carleton v. Redington, 1 Fost. (N. H.) 291; Johnson v. Lewis, 13 Conn. 303; Noyes v. Stillman, 24 Conn. 14; Conhocton Road v. Railroad Co., 51 N. Y. 573; Ahern v. Steele, 115 N. Y. 203, 22 N. E. 193; McDonough v. Gilman, 3 Allen, 264; Nichols v. City of Boston, 98 Mass. 39; Grigsby v. Water Co., 40 Cal. 396; Castle v. Smith (Cal.) 36 Pac. 859.

It is, however, further contended that in this particular case notice was not requisite—First, "because the defendant has made use of the embankment ever since it acquired possession of the same, with a knowledge of its injurious results; and, second, because the defendant has actively maintained and continued the embankment by repairing and stoning the same." The assertions of law and of fact embodied in these propositions have had our careful consideration, but we have not been convinced that either of them is well founded. We are by no means satisfied that knowledge by a defendant of the damage caused to a plaintiff renders a request to abate unnecessary. The general principle that ordinarily actual knowledge supersedes a requirement of notice is not overlooked, but here not only is notice required to direct attention to the damage occasioned by the nuisance alleged, but a request to abate is also needed to inform him who continues it that it is not assented to. As was said in Johnson v. Lewis, supra, the plaintiff "should be presumed to acquiesce until he requests a removal of the nuisance"; and, if this view be correct, knowledge of the injury done, even if tantamount to notice of that fact, is still not equivalent to all that is requisite, for it does not rebut the presumption of acquiescence.

But it is not necessary to pass upon this point, and we do not do so. For the present purpose, it is sufficient to say that we find upon the record before us no evidence whatever that the appellant actually knew of the hurt done by the embankment, and that nothing appears which, in our opinion, would warrant us in charging it with constructive knowledge of it.

As to the second proposition, it must be admitted that the appellant has maintained the embankment; that it uses it as part of its roadbed, and for that use .has repaired and preserved it. Does it follow that this action, though brought without notice or request, can be maintained? There certainly is nothing in the Penruddock Case, or in any of those which follow its lead, upon which an affirmative answer to this inquiry could be based. There are cases to the effect that a feoffee or lessee is liable, without request, where he increases the nuisance; but where this is shown he is held to be liable to the extent of the increase only, and this upon the ground that to that extent the nuisance is a new one, and arises from his own act. This principle of liability has been applied, too, in cases where the cause or means of nuisance was not added to, but where the use made of it was such as .to be in itself a nuisance, and, consequently, a new wrong. Of these, Moore v. Browne, 3 Dyer, 319, is an example. It was an action on the case for diverting the water of a conduit pipe. It appeared that the husband of the defendant had attached to the main a small pipe with a cock, thereby drawing water, at his pleasure, to serve his house. The wife continued to draw after his death, and for this she was held liable as for a new diversion. The distinction between such a case and that now under consideration is manifest. Continuance in the active commission of a wrong, by the use of pre-existing means, is one thing, but the use of a wrongful structure in a manner and for a purpose wholly disassociated from the wrong is quite another and a very different thing. The use of this embankment by maintaining tracks on it neither renders it more injurious, nor inflicts any separate injury. If it had been constructed for the purpose of accumulating water, and the appellant had used the water so accumulated, the cases would be more like; as it is, they are essentially dissimilar. If the complaint was, not merely of the maintenance of the embankment by the defendant, but that the defendant backed ·up and used the water, there would have been no necessity to allege who erected it, or that request had been made for its removal, because the conduct of the defendant itself would have been the basis of the action, and not the presence of an embankment which it had not constructed. There is another class of cases, represented by Irvine v. Wood, 51 N. Y. 228, in which it is held that, where a positive legal duty is attached to the possession of property, a failure on the part of its possessor to discharge that duty is not justified by the fact that its performance was rendered necessary by the condition in which the property had come into his hands. But what duty with respect to this embankment, either to the appellee or to the public, has the appellant neglected? It is not only admitted, but is insisted, that it has been kept in repair, and it is not pretended that

the appellant has been guilty of any want of care to the damage of the appellee. No, it is the existence of the embankment which is complained of, and to assert that there is, in the absence of request, a duty to remove it, is to beg the question at issue, not to solve it. Irvine v. Wood, and other like cases, do not determine it, for they did not involve nor induce its consideration.

But it has been insisted that, although the views we have expressed may prevail in England, and throughout the United States generally, they are not in accord with the law of New Jersey, and therefore we have given to the decisions of the courts of that state especial consideration. The earliest of these is to be found in the report of the case of Pierson v. Glean (1833) 14 N. J. Law, 36. There the question was whether a party upon whose land a dam had been erected by a prior owner was, without request, liable for the nuisance thereby occasioned, and it was held that he was not. The defendant had set up, by pleas, that no request had been made, and to those pleas the plaintiff demurred. In the opinion of the court (Hornblower, C. J.), the law on the subject is said to have been then settled; and the Penruddock Case, and others, are referred to as supporting this statement and conclusion:

"As well, then, upon the good sense and common justice of the case, as upon the ground of unquestioned authority, I am of the opinion that the demurrer ought to be overruled."

In Beavers v. Trimmer (1855) 25 N. J. Law, 97, the defendant demurred to the declaration, assigning for cause:

"(1) That there is no allegation that the defendant erected the dams, etc.; (2) that there is no averment of a request to remove them."

And as to these two causes the court, citing Pierson v. Glean and other authorities, said:

"Where the action is brought for the erection or continuance of a nuisance, it is necessary to allege that the defendant erected or continues it; and if the action is not brought against the original erector, but against the feoffee, lessee, etc., a special request to remove it must be alleged."

Then followed the decision in Canal, etc., Co. v. Ryerson (1859) 27 N. J. Law, 457; and it is argued that by it the two preceding cases were overruled, or at least so modified and limited as to render them ineffective in the present case. The first of these suggestions encounters the objection that no intention to supplant the earlier cases is expressed in the later one; and the alternative position rests upon a construction of the judgment in the Ryerson Case which is inaccurate and inadmissible. Pierson v. Glean was explained and distinguished,—not overruled; and, although the learned judge who delivered the opinion had concurred in the judgment in Beavers v. Trimmer, that case was not even mentioned. In Canal, etc., Co. v. Ryerson, the action was brought for damage done to the plaintiff's land by the defendant's use of, and omission to repair, certain works of its canal, for the creation of which it was not responsible; and in a single sentence of the opinion of the court we have the substance of the utmost which it contains to give color to the view which the appellee asks us to take of it as a whole. That sentence is, "An ac-

tion may be maintained against a party who continues a nuisance erected by another, without a request to abate it"; and the question which confronts us is, what is the precise thought intended to be expressed by this inexplicit language? In what sense were the words "continues a nuisance" used; or, to put it differently, what was in mind as constituting a continuance of a nuisance? If this question can be satisfactorily answered, all difficulty as to the true purport and effect of the opinion may be overcome. In the first place, it may be said that it is scarcely conceivable that a different significance was purposed to be ascribed to the term "continuance of a nuisance" from that which had been theretofore attached to it. The Penruddock Case was not rejected, and the decisions which uphold its rule, though to some extent critically discussed, were not disapproved. It was said that Penruddock's Case does not support the doctrine which was contended for in the case which was under consideration, but it was not intimated that the doctrine which it does support is not in conformity with the law of New Jersey. It was pointed out that it was not necessary to question the correctness of the decision in Pierson v. Glean, for, admitting its authority in its broadest extent, its principle was not pertinent. Indeed, the opinion in the Ryerson Case cannot be carefully read without discerning that the object of its author was, not to discard or overthrow an established doctrine, but to demonstrate its inapplicability to a particular case. The right of the defendant to maintain the works there in question was upheld (page 467), and the instruction of the trial judge that there was no liability except for faulty construction or failure to repair was approved, the court saying:

"Although one of the counts of the declaration claims damages resulting from the erection of the dam and embankment, yet the charge of the court clearly excludes from their consideration all damages resulting from that cause alone."

In short, the defendant's liability was maintained (irrespective of the omission to repair, which was the actual basis of the decision) solely upon the ground of continuance of nuisance; and, as we have before said, the only question is as to what was in contemplation as evidencing or constituting a continuance. If it was intended to affirm that any use whatever of a structure which had been wrongfully erected amounts to a continuance of the wrong, even though the acts of user are not themselves injurious, and do not newly cause or add to the original injury, then indeed this opinion would conflict with the uniform current of authority. But we do not think that it is fairly subject to such interpretation. It contains this defining language:

"Whether there be in fact a continuance of the nuisance by the defendant is a question of evidence. If the defendant, by any active participation of his. assent to the wrong,  *  *  *  he continues the nuisance."

There must be assent to the wrong, and to establish this there must be evidence of active participation in the wrong. Use of the thing complained of, for a purpose entirely apart from the hurt it occasions, is not enough. Such a use is, with respect to the injury, passive, and not active. It involves no participation in, no adoption or

partaking of, the wrong committed by the creator of the injurious thing. The illustrations which accompany the definition we have, quoted make this very clear. It is said:

"If, for instance, he [defendant] repairs the dam, and holds back the water upon his neighbor for use of his own mill or canal, he continues the nuisance; * * * but, if the defendant simply suffer a dam erected upon his land by a former owner to remain without being used by him, it is no continuance of the nuisance."

The distinction is obvious. One who by repairing a dam causes water to accumulate on another's land, and uses that water for his own mill or canal, actively participates in the wrong itself, and partakes of the very element of direct injury. He continues, not the dam merely, but the nuisance committed by its means. But where a dam is suffered to remain without being used as or for the purposes of a dam (and the character of use referred to in both illustrations must be taken to be the same), there is no use of it as a wrong-doing agency, and consequently there is not a continuance of the nuisance. What has been said makes it unnecessary for us to further comment upon the opinion in Canal, etc., Co. v. Ryerson. The following passages from it do not require explanatory discussion. They indicate its general tenor, and support, we think, our apprehension of its import. In speaking of Moore v. Browne, supra, it is said:

"The clear principle of the case is that an act of hers, appropriating the water to her use, thus recognizing and sanctioning the wrongful act of her husband, was a continuance of the wrong."

Of the Penruddock Case, it is said:

"It is obvious that the defendant did no act assenting to the wrong, or appropriating it to his use, and thereby adopting or continuing the nuisance. He was therefore no more liable for the injury than he would have been if a stranger had entered upon his premises, and placed a nuisance there without his assent. The case is 'n strict accordance with the principle adopted in Hughes v. Mung,[1] viz. that the defendant's living in the house did not amount to a continuance of the nuisance by him."

With respect to Beswick v. Cunden, Cro. Eliz. 402, it is observed:

"But, the case being again argued, the court held that the action could not be maintained, on the ground that there was no offense done by the defendant, for he did not do anything; and therein the case was distinguished from the case in 4 Assiz. pl. 3, for there the using was a new nuisance."

And in discussing Pierson v. Glean it is remarked:

"It is not the erection of a dam, but the holding back of the water upon the plaintiff's land, that constitutes the nuisance; and had the plaintiff, instead of demurring to the plea, replied that the defendant had so held back the water, and had, by means of the gates, from time to time, overflowed the plaintiff's lands, the case would have been brought directly within the authority of Moore v. Browne."

A few lines further on it is stated that the complaint in the Ryerson Case was—

"Not that the defendants wrongfully maintained the dam, but that they neglected to maintain and keep in repair the guard bank erected to secure the plaintiff's land from injury resulting from the erection of the dam. If

---

[1] 3 Har. & McH. 441.

it was the defendant's duty to maintain and keep in repair the guard bank, no notice can be necessary to sustain an action for damages resulting from neglect of such duty."

So that it appears that the point which is controlling here was not necessarily for consideration there; and the circumstance that the facts of that case did not require that the agency of nuisance should be distinguished from the nuisance committed by the use of the agency no doubt accounts for the frequent, but not universal, employment in the opinion of the word "nuisance" to designate the instrumentality by means of which the wrong is effected, as well as to denote the wrong itself,—the injurious use. That this indiscriminate application of the word "nuisance" was not, however, made in deliberate disregard of its distinctive appropriateness in cases where the wrong is committed by use, is evidenced by the remark before quoted,—that "it is not the erection of a dam, but the holding back of the water upon the plaintiff's land, that constitutes the nuisance."

In conclusion, we do not doubt that, not only in England but in the United States as well, and especially in the state of New Jersey, the rule of Penruddock's Case is firmly established; and we are satisfied that it has not undergone any modification nor been subjected to any qualification which renders it inapplicable to the present case. We are therefore of opinion that in refusing to apply it upon the trial, there was error; and solely upon this ground the judgment of the circuit court is reversed.