312 P.2d 103

**George HUNTSMAN, Plaintiff-Appellee,**
**v.**
**Morris SMITH, Defendant-Appellant.**
**No. 6152.**

Supreme Court of New Mexico.
June 7, 1957.

Lewis R. Sutin, Albuquerque, for appellant.

Charles M. Tansey, Jr., Farmington, for appellee.

KIKER, Justice.

At the time suit was filed plaintiff and defendant were owners of adjoining lots in the town of Farmington. Plaintiff owned lot numbered 11 and defendant, a resident of Albuquerque, owned lot 12 to the north of lot 11.

At the south boundary line of lot 12 there was a wall. In the building of this wall a shallow ditch was first made in the earth and into this was first placed some mortar, then some rock or boulders, then more mortar and so on to the top of the wall which was approximately 5 feet 10 inches in height at one end and 7 feet at the other; the wall was about 14 inches thick. Before the wall was built plaintiff had sold lot 12 to another and in the course of time defendant became owner of the lot which at all times was vacant but which was adjoining part of the property owned by defendant. South of this wall was a shallow ditch which had been used for irrigation but which had been abandoned at some date the record does not show and is apparently of no significance in the decision of this case.

At some time after the wall was built, it being 138 feet long, it cracked. The plaintiff had seen the wall while it was being constructed and knew the nature of its construction. Before the wall was built, at some time, the plaintiff erected a building near the north border line of lot 11; after the wall was constructed, he built another house about the same distance from the wall. Plaintiff had occasion to observe the wall from time to time and for a considerable time before the wall fell had seen cracks in it. The wall was badly broken and cracked and was leaning outward slightly toward plaintiff's property. Plaintiff did not at any time tell defendant or defendant's predecessor in title of lot 12 of the condition of the wall. At one time plaintiff had seen a truck which was on lot 12 bump into the wall.

The slope of lot 12 was slightly to the north and it had been leveled by moving sufficient earth against the wall to level the ground. Early in 1954 a son-in-law of plaintiff inspected the wall and observed that it was rather badly cracked and in need of repair. Later, he talked with defendant about purchasing lot 12. While so negotiating, this son-in-law told defendant of the condition of the wall and that the price asked for the lot was too high, because of the necessary work to be done to make the wall safe. Defendant believed that the son-in-law was exaggerating as to the condition of the wall in order to lower the price asked for the lot and did not then or thereafter examine or even look at the wall.

In July of 1954, the same year in which the son-in-law had advised defendant of the condition of the wall, during an unusual rain and hail storm, the wall fell and

injured the buildings erected by plaintiff along the end of the lot.

Defendant had never at any time, either before or after being advised that the wall was in bad condition, inspected the wall. When he bought lot 12 for speculative purposes he did not examine the wall but merely saw that there was a wall at the south boundary line of the lot.

In July, 1954, during an unusual rain storm in which there was hail with lightning and loud peals of thunder, the wall fell and damaged the buildings erected by plaintiff near the south line of lot 11. Defendant had owned lot 12 for six years at the time the wall fell and during that time there had been no difficulty.

Plaintiff's buildings on lot 11 were rented. When the wall fell damaging plaintiff's buildings, all tenants moved out. One of the tenants was paying rent at the rate of $100 per month and another at the rate of $90. The first mentioned of these apartments was not rented after the wall fell for 30 days and another was vacant for 46 days. There was another apartment which was vacant for 49 days so that plaintiff lost rent during that time. He worked about repairing the building and made claim for the value of the labor. He employed labor and bought materials for repair making claim therefor. He gave an estimate of the necessary repairs of certain of his damaged property which was not repaired when the suit was filed. Plaintiff sued defendant for damages done his building and the contents and was awarded a judgment in the district court.

Defendant, as appellant, states six points for reversal. The first is that the evidence is wanting to support the findings and conclusions of the court that the defective condition of the wall was the proximate cause of its collapse. Defendant argues that if the wall had merely collapsed by reason of the cracks or lack of reinforcement it would have "just sat down" with boulders strewn on the ground in the four feet area between the wall and plaintiff's buildings. Whether this statement is correct we are not at all as sure as is defendant. Just what a falling structure will do, we think it difficult to predict. This would seem to be particularly true when a wall 138 feet in length and badly cracked, gives way and falls in the direction in which a part of it, at least, has been leaning.

The findings of the court show that the filling in of lot 12 raised the level of that lot above the level of plaintiff's lot 11; that the wall was not constructed according to proper standards and that defendant had constructive knowledge of the defective condition and construction of the wall and had reasonable opportunity to remedy its defects but failed to do so; that the wall was not undermined or weakened by any

act of the plaintiff on his lot and that it fell as a result of its defective condition; and the court concluded that the collapse of the wall was not caused by an inevitable accident or an act of God or the negligent acts of defendant but collapsed because of the defective construction and defendant's failure to maintain it in proper repair; and defendant was held responsible to plaintiff in damages for negligence.

It must be true, of course, that when the earth was moved against the wall which was 14 inches thick, on the north side, so that the earth was then higher than it was on the south side, falling water must soak into the earth on the north side according to the amount of rainfall unless it could drain through the wall and if there were sufficiently large cracks for the water to drain through, then, in time, it would necessarily fall. It took seven years before this wall toppled and then it fell during a rainstorm and after a flash of lightning which a neighbor testifying thought had struck something, possibly a car, which was not damaged, in the immediate vicinity. It might be possible for a bolt of lightning to strike a good, solid, properly constructed wall made of rock and mortar without doing any damage to it at all. We do not know; but we do think that a wall in such condition as that above described might fall at some time with or without a rainfall and with or without lightning.

We think that defendants point one, that no evidence supports the findings of the court, must be overruled because of the facts already stated and of the further facts that there was testimony from a stonemason as to the nature of the construction of the wall and that it was not likely to withstand pressure of dirt above it and water for any great length of time because the water would soak into the earth and the pressure on the wall would be constantly pushing it outward. There is substantial evidence to support the finding of the court as to the fall of the wall and the finding will not be disturbed. Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540; Trigg v. Trigg, 37 N.M. 296, 22 P.2d 119; Flippo v. Martin, 52 N.M. 402, 200 P.2d 366; Horchheimer v. Prewitt, 33 N.M. 411, 268 P. 1026.

Defendant's point two on appeal, in contradiction of the court's findings, states that the wall toppled over by virtue of an act of God of which defendant is not guilty. The argument is that lightning struck the wall and that it fell. The evidence shows that there was lightning but the evidence does not show exactly when the wall fell. There was rain, thunder, lightning and hail. One witness testified that there was an unusual hail storm but another witness, a boy who had played on the wall previously, testified as to the weather that it was "raining some," and being asked if there was any kind of storm otherwise, answered:

"A. No, not that I remember of.

"Q. Any lightning? A. No."

One witness testified that she saw lightning and went out to call her little boys who had been playing in the yard and did not see any wall down then but later noticed activity around the wall and that the wall was down; this was about 30 minutes after the lightning. The fire chief of Farmington testified that he inspected the wall and buildings soon after the wall fell and found no evidence of lightning having struck anything.

Plaintiff, in support of his second point, cites Shephard v. Graham Bell Aviation Service, Inc., 56 N.M. 293, 243 P.2d 603. We do not think that case supports the point made here by defendant. The case holds that the concurrence of some other cause with the negligence of defendant in producing an injury does not relieve defendant from liability unless it is further shown that the other cause would have produced the injury independently of defendant's negligence. City of Piqua v. Morris, 98 Ohio St. 42, 120 N.E. 300, 7 A.L.R. 129.

 Defendant's point three is that where a grantee takes property with an existing nuisance upon it he is not liable to anyone for an injury therefrom unless first requested by the person later injured, annoyed or disturbed to abate the nuisance. In argument on this point defendant takes the position that if the wall on the day, and before, and at the time the property was purchased by defendant was cracked and in a dangerous condition it was a nuisance and he cites to this proposition the following authorities: 39 Am.Jur. 320, § 40, "Nuisance"; Roberts v. Georgia R. & Power Co., 151 Ga. 241, 106 S.E. 258, 14 A.L.R. 1094; Conhocton Stone Road v. Buffalo N. Y. & Erie R. Co., 51 N.Y. 573, 10 Am. Rep. 646; Johnson v. Lewis, 13 Conn. 303, 33 Am.Dec. 405; Philadelphia & Reading R. Co. v. Smith, 3 Cir., 64 F. 679, 27 L.R.A. 131.

These authorities are cited by defendant on the assumption that the wall constituted a nuisance. If it did, and defendant has not undertaken to establish the fact that the wall in the condition it was in before it fell was a nuisance, then the cited authorities are in point; but if the situation is such that defendant's having the wall in its condition on his property and having been informed of such condition, as he was by another, then the injury from its fall was a matter of negligence and the cases are not material to the determination of this case. We think the cases cited by defendant, dealing with nuisances, are immaterial since we hold that the situation in the case at bar is not a nuisance.

In 65 C.J.S. Negligence § 1, p. 317, we find the following, which states, we think, a clear distinction between that which is negligence and that which is a nuisance:

"Negligence has been said to be a violation of a relative duty, nuisance of an absolute duty; that is, the creation or maintenance of a nuisance is the violation of an absolute duty, the doing of an act which is wrongful in itself, whereas negligence is the violation of a relative duty, the failure to use the degree of care required under the particular circumstances in connection with an act or omission which is not of itself wrongful. The distinction has also been stated as follows: When defendant is the creator of a dangerous situation, his liability therefor is for a nuisance; but when defendant did not create a dangerous situation, but is nevertheless under a duty to remove the danger, failure to do so involves a question of negligence."

See Hayes v. Brooklyn Heights R. Co., 200 N.Y. 183, 93 N.E. 469, Jepson v. International R. Co., 80 Misc. 247, 140 N.Y.S. 941, affirmed 163 App.Div. 933, 147 N.Y.S. 1118, affirmed 220 N.Y. 731, 116 N.E. 1053.

Defendant did not create the dangerous situation but had reason to examine the wall to determine if it was in a safe condition. This being true if that condition should result in injury to another because of the owner's failure to correct the defect then it must be that an action for recovery of damages based on negligence would lie. If that which happens to the condition destroys it and at the same time injures another, then it certainly would be too late to seek to have the nuisance abated; and the only possible action remaining would be an action for damages. It is true, of course, that no action at law could be maintained until after the damage was done. It is just as true that after the nuisance which arose from the negligence of the property owner has ceased to exist there can be no suit for abatement of a nuisance.

Defendant's point four for reversal presents a discussion of latent defects. Citations of authority have to do with the purchase of structures showing no defects but which actually collapse because of hidden defects. We do not see the application of such citations to the situation existing here.

There is evidence in the case before us that the wall was badly cracked and that it was leaning toward lot 11 before it fell.

Defendant's point five is that he had no duty to repair the cracks in the wall in the absence of an obvious danger. Defendant cites respectable authority in support of this proposition which must necessarily be true.

Unless the wall was in such condition that a reasonably prudent man with a view to safety of the persons and property of others would repair the wall or do other work which would prevent its falling to the injury of others, then defendant could have no duty to repair or rebuild.

Under point five, however, defendant argues that he was not notified of the condition of the wall. He admits that he was told by plaintiff's son-in-law of the fact that the wall was in bad shape and would have to be repaired but that notice so given did not impress him because he thought that the son-in-law was trying to get a reduction in the price of the property. No evidence is pointed out that defendant ever at any time viewed the wall from lot 11 or any other place below the lot. Defendant testified that he had never examined the wall and added that if he had looked at it he would have removed it, to continue with his language, "because it is not a proper way, the house so close to the wall." We think any reasonable and prudent lot owner, being told that the wall was in need of repair, would have made an examination of it. Point five is resolved against defendant.

Plaintiff's point six complains of the amount of damages awarded by the court. Three separate criticisms are stated but no evidence is cited by defendant in support of any of these attacks and so we must adopt the findings of the trial court with respect to damages.

The judgment of the trial court must be affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE, and COMPTON, JJ., concur.