695 P.2d 1322

**Joe MORENO, Leo Nichols and the City of Lovington, New Mexico, Plaintiffs-Appellants,**

v.

**Wayne MARRS, individually and Wayne Marrs, d/b/a Marrs Mud Company, and Corral, Inc., a corporation doing business in New Mexico, Defendants-Appellees.**

No. 7502.

Court of Appeals of New Mexico.

July 10, 1984.

Certiorari Quashed Feb. 28, 1985.

David H. Pearlman, David H. Pearlman, P.A., Albuquerque, for plaintiffs-appellants Joe Moreno and Leo Nichols.

Lowell Stout, Mark Stout, Stout & Stout, Hobbs, Sarah M. Singleton, Singleton Law Offices, Santa Fe, for defendants-appellees.

## OPINION

WOOD, Judge.

A fire occurred at the Marrs Mud Company warehouse in Lovington, New Mexico on February 5, 1982. Both the Lovington and Knowles Fire Departments responded to the fire. The complaint alleged that Moreno, a volunteer fireman with the Lovington Fire Department, and Nichols, a volunteer fireman with the Knowles Fire Department, suffered injuries in performing duties as firemen. The complaint also alleged that the City of Lovington suffered damage to its firefighting equipment. Each of the three plaintiffs sought compensatory damages. The trial court granted summary judgment in favor of all defendants.. This appeal followed. We (1) identify the parties to the appeal; (2) dismiss the City of Lovington's appeal; (3) state a "fireman's rule" for New Mexico; (4) discuss Moreno's and Nichols' theory of nuisance in relation to the fireman's rule; and (5) discuss the propriety of the summary judgment in favor of Corral, Inc.

**Parties to the Appeal**

■ The trial court granted summary judgment in favor of Wayne Marrs, individually, and Wayne Marrs, doing business as Marrs Mud Company. This summary judgment was granted on the basis of uncontested affidavits to the effect that Marrs Mud Company was a New Mexico corporation and the wholly-owned subsidiary of Corral, Inc., another corporation; that Wayne Marrs, as an individual, owned no interest in either corporation; and that Wayne Marrs' status was that of an employee. The propriety of this summary judgment is not contested and was not appealed. The briefs of Moreno and Nichols suggest they are under the impression that an entity referred to as the "Mud Company" is an appellee. This is incorrect. The only defendant remaining after the dismissal of Marrs was Corral, Inc., and that corporation is the only appellee. Each of the three plaintiffs joined in the notice of appeal, which involves the summary judgment in favor of Corral, Inc.

## City of Lovington's Appeal

■ Although the City of Lovington (City) joined in the notice of appeal and proceeded as an appellant in the filing of the skeleton transcript and the record on appeal (NMSA 1978, Civ.App.R. 6 and 7 (Repl.Pamp.1984)), it has filed no briefs in this court. NMSA 1978, Civ.App.Rule 9(f) (Repl.Pamp.1984) authorizes this court to dismiss an appeal for failure to timely file a brief-in-chief. *See Deal v. Western Clay & Gypsum Products Co.*, 18 N.M. 70, 133 P. 974 (1913). Such a failure has occurred in this case, but there has been more. Although given notices by this court, and served with copies of the briefs of other parties, the City has made no response. The City has ignored notices and has not been heard from. In this situation, we hold that the City has abandoned its appeal. *Cf. Novak v. Dow*, 82 N.M. 30, 474 P.2d 712 (Ct.App.1970). Accordingly, the City's appeal is dismissed.

## A Fireman's Rule for New Mexico

■ Before a defendant may be found liable to a plaintiff in a tort case, the defendant must have breached a duty to the plaintiff. *Barham v. Baca*, 80 N.M. 502, 458 P.2d 228 (1969); *cf. Latimer v. City of Clovis*, 83 N.M. 610, 495 P.2d 788 (Ct.App. 1972). The fireman's rule states the duty of an owner or occupier of land to a fireman responding to a fire on the owner's or occupier's premises. The duty of the owner or occupier of land is ultimately one of public policy. *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 155, 571 P.2d 609, 612 (1977), states:

> [T]he fireman's rule is based on a principle as fundamental to our law today as it was centuries ago. The principle is not unique to landowner cases but is applicable to our entire system of justice—one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby.

*See Armstrong v. Mailand*, Minn., 284 N.W.2d 343, 11 A.L.R.4th 583 (1979).

Whether there should be a fireman's rule in New Mexico and, if so, the extent of the rule are issues to be decided in this case because the summary judgment depends on the duty Corral, Inc. owed to the firemen. Having found no New Mexico decisions on these questions we consider them matters of first impression.

We hold there should be a fireman's rule; we do so on the basis of the reasoning of *Walters v. Sloan*.

Before stating the rule to be followed, we answer, in paragraphs First through Fifth, several related contentions raised in the briefs.

■ First, the application of the rule does not depend upon whether the fireman is to be categorized as a licensee, an invitee or accorded a sui generis category. W. Prosser, *The Law of Torts* § 61 at 397 (West 4th ed. 1971) comments that there is an "aspect of absurdity" about decisions defining duty in terms of how the injured fireman should be categorized. As the Annotation, 11 A.L.R.4th 597 (1982), points out, at 601: "[F]iremen are on the premises in the discharge not of any private duty due from them to the occupant, but of a duty which they owe to the public ...." *Walters v. Sloan* holds that the fireman's rule is not based on the way a plaintiff is categorized because the duty owed under the rule is based on a concept, not a category. The concept is "confronting a known peril with full realization of the risk." *Walters v. Sloan*, 142 Cal.Rptr. at 155, 571 P.2d at 612.

Second, the application of the rule does not depend upon whether the fireman is injured on the premises where the fire is located. We do not know where Nichols was physically located when allegedly injured.

Moreno testified, in his deposition, that he had been with the Lovington Fire Department for approximately one and one-half months, and was not yet sufficiently trained to fight fires. Moreno functioned as a helper; he did what he was told to do. The squad to which Moreno was assigned was not the first squad to arrive at the Marrs Mud Company fire; Moreno's squad finished up duties in connection with a fatal car accident before going to the Marrs Mud Company fire. At the Marrs Mud Company fire, Moreno was east of the fire and the wind was blowing to the west-southwest; he did not inhale any smoke at the fire scene. Moreno, acting as helper, was told to check out the schools to see if the children had been evacuated. When he got to the schools, the children were already gone. Moreno was then sent with three others to an area of the city with Spanish-speaking people to be able to communicate, in Spanish, the need to evacuate. The smoke in that area was heavy and there were ashes in the air. Moreno testified that he was "hit" in this area; he started coughing, his eyes started watering, he was given oxygen and taken to the hospital.

■ The duty owed by an owner or occupier of land to a fireman injured in the performance of his duties as a fireman does not depend upon whether the injuries occurred on or off the premises of the fire. The duty owed to the fireman performing his duties is the same regardless of the physical location of the fireman when injured. *Whitten v. Miami-Dade Water & Sewer Authority,* 357 So.2d 430 (Fla.App. 3d Dist.1978). *See also Price v. Morgan,* 436 So.2d 1116 (Fla.App. 5th Dist.1983).

■ Third, the application of the rule does not depend upon whether the fireman is paid or is a volunteer. Moreno and Nichols contend that a distinction should be made between paid and volunteer fireman because an injured, paid fireman will receive worker's compensation for his on-the-job injuries while a volunteer fireman will not. *Cf. Chapman v. Anison,* 65 N.M. 283, 336 P.2d 323 (1959) *with Jelso v. World Balloon Corp.,* 97 N.M. 164, 637 P.2d 846 (Ct.App.1981). The availability of worker's compensation benefits has been included in rationalizations of the fireman's rule. *See ·Baker v. Superior Court for County of Orange,* 129 Cal.App.3d 710, 181 Cal.Rptr. 311 (1982). Such rationalizations overlook the basis of the fireman's rule— confronting a known peril with full realization of the risk.

We agree with the following from *Buchanan v. Prickett & Son, Inc.,* 203 Neb. 684, 279 N.W.2d 855, 860 (1979):

Volunteer firemen, although uncompensated, undertake the same duties as paid firemen. We may even take note of the fact that in Nebraska some fire departments consist of both paid and volunteer members. It would be impractical to distinguish between volunteers and paid firemen in those cases.... Whether more of the burden of injury resulting from risks involved should be assumed by government is a question for the [legislature] to determine.

■ Fourth, the rule does not apply to conduct which causes the fire to which the fireman responded. By "cause" we are referring to "negligence," "strict liability" and other terms which designate the basis for imposing liability after a duty is violated. The parties agree that negligence in causing a fire is not a basis for liability to firemen injured in fighting the fire. In fact, the view that there is no liability to a fireman for negligence in causing a fire is· a statement of the fireman's rule as it originally existed. *Walters v. Sloan.* The briefs of Moreno and Nichols suggest that if the fire is caused by an activity which is ultrahazardous the fireman's rule is inapplicable. We disagree. *Lipson v. Superior Court of Orange County,* 31 Cal.3d 362, 182 Cal.Rptr. 629, 638, 644 P.2d 822, 831 (1982), states:

Where the defendant's only act was to cause the fire in which the fireman was injured, it is immaterial whether the defendant's act was negligent or ultrahazardous. In either situation, the assumption of risk principle underlying the fireman's rule applies. Firefighters are trained and compensated to fight fires caused by the maintenance of an ultrahazardous activity as well as fires that result from negligent causes. Thus, this court holds that the fireman's rule bars recovery on a theory of strict liability where the fireman sustains injuries as a proximate result of the same ultrahazardous activity that causes the fire. (Footnote omitted.)

Fifth, a corollary of "Fourth" above, the rule applies to conduct which is "independent from that which was responsible for the summoning of the fireman." *Lipson,* 182 Cal.Rptr. at 638, 644 P.2d at 831.

There are a variety of fireman rules. *See* Annot., 11 A.L.R.4th, *supra,* at 597. What is the appropriate one for New Mexico?

■ Corral, Inc. suggests that the only duty an owner or occupier of land should owe to a fireman is to refrain from inflicting an injury willfully or wantonly. *See*

Annot., 11 A.L.R.4th, *supra*, § 3 at 602. We disagree. Such a rule would be too limited; it would not include the hidden hazard known to the owner or occupier of land and unknown to the fireman. *Clark v. Corby*, 75 Wis.2d 292, 249 N.W.2d 567 (1977). Such a rule is contrary to the reason for a fireman's rule—the confrontation of a known peril with full realization of the risk. *Lipson v. Superior Court of Orange County* explains:

> A fireman assumes only those hazards which are known or can reasonably be anticipated at the site of the fire....
>
> ....
>
> Thus, the principle of assumption of risk, which forms the theoretical basis for the fireman's rule, is not applicable where a fireman's injuries are proximately caused by his being misled as to the nature of the danger to be confronted....
>
> The type of deception most frequently confronted by the courts has been the failure of a landowner or occupier to warn a fireman of a known, hidden danger on the premises.

*Id.* 182 Cal.Rptr. at 635, 644 P.2d at 828 (citations omitted).

 Moreno and Nichols suggest there should be a duty to warn of known dangers. We agree, stating this duty in the next paragraph. Moreno and Nichols also suggest an affirmative duty to make the premises safe. We disagree. Prosser, *supra*, at 397, states the "one really valid basis" for a fireman's rule is that firemen "are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in looking after the premises, and in preparation for the visit, cannot reasonably be looked for."

We state a rule in two parts, recognizing there is a relationship between the parts, and that a casuist might interpret the two parts as one.

 The first part is from *Clark v. Corby* which states:

> [O]wners and occupiers of land owe a duty to firemen to warn them of hidden perils, where the owner or occupant knows of the peril and has the opportunity to give warning of it.... [T]o trigger this duty to warn there must coexist the following four prongs: (1) A hidden hazard—a concealed danger that foreseeably created an unreasonable risk to others; (2) which hidden hazard or danger is known to the landowner; (3) which hidden hazard or danger is not known and not observable by the fire fighter; and (4) existence of a clear opportunity for the landowner to give warning of the hidden hazard.

*Id.* 249 N.W.2d at 570.

The second part is from *Lipson v. Superior Court of Orange County:*

> [T]he situation in which a defendant negligently or intentionally misrepresents the nature of a hazard to a fireman cannot be meaningfully distinguished from the situation in which a defendant fails to warn of a known, hidden danger on the premises. In both situations, the defendant misleads the fireman as to the nature or the extent of the hazards present at the site of the fire.... Thus, if a fireman is allowed to recover for injuries suffered because a landowner or occupier failed to warn him of a known, hidden danger on the premises, he must also be allowed to recover for injuries suffered as a result of a negligent or intentional misrepresentation of the nature of the hazard he confronted.

*Id.* 182 Cal.Rptr. at 635–636, 644 P.2d at 828–829.

In the foregoing discussion we have used the term "assumption of risk" and have used words appropriate to that concept. Thus, a caveat is appropriate. We have not overlooked *Williamson v. Smith*, 83 N.M. 336, 491 P.2d 1147 (1971), which explains two meanings of assumption of risk. Our use of the term "assumption of risk" is in the primary sense of no duty, which accords with *Williamson v. Smith; Walters v. Sloan;* and *Armstrong v. Mailand.*

## A Theory of Nuisance in Relation to the Fireman's Rule

The complaint of Moreno and Nichols alleged that on and before the day of the fire "a variety of highly toxic drilling chemicals or materials" were at the warehouse and this storage "constituted the maintenance ... of an ultrahazardous activity...." The complaint also alleges, in similar language, that the storage and maintenance was an "abnormally dangerous activity", and the storage and maintenance "created an undue risk of injury beyond the risks inevitably involved in firefighting."

We are not concerned in this appeal with ultrahazardous activity, abnormally dangerous activity or activity resulting in an undue risk of injury as independent grounds for relief. Moreno and Nichols claim that, collectively, the allegations state a claim in "nuisance." Corral, Inc. disputes this. It is unnecessary to decide the pleading question; rather, we assume the complaint alleges Corral, Inc. is liable on the grounds of "nuisance." What follows from this assumption?

Moreno and Nichols contend: (1) the fireman's rule does not apply to tort claims based upon a nuisance, and (2) negligence concepts under the fireman's rule do not apply to claims based upon nuisance. We have indirectly answered both of these contentions in our discussion concerning a fireman's rule for New Mexico. Here we answer directly, and our answer is that these contentions are without merit.

We have previously pointed out that the fireman's rule states the duty of an owner or occupier of land to a fireman. It makes no difference whether the theory for recovery is based on negligence, strict liability for an abnormally dangerous condition or strict products liability. Unless the duty owed has been breached, there may be no recovery. *Armstrong v. Mailand.* We read *Lipson v. Superior Court of Orange County* to be in accord with *Armstrong v. Mailand,* but recognize the language of *Lipson* is ambiguous on this point.

Does use of the word "nuisance" change the requirement that a duty must be violated before liability may be imposed, regardless of the theory of liability? No. Prosser, *supra,* at 573–574, 577, states:

Another fertile source of confusion is the fact that nuisance is a field of tort liability, rather than a type of tortious conduct. It has reference to the interests invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion. The attempt frequently made to distinguish between nuisance and negligence [see the second claim of Moreno and Nichols identified above], for example, is based upon an entirely mistaken emphasis upon what the defendant has done rather than the result which has followed, and forgets completely the well established fact that negligence is merely one type of conduct which may give rise to a nuisance. The same is true as to the attempted distinction between nuisance and strict liability for abnormal activities ....

... Today liability for nuisance may rest upon an intentional invasion of the plaintiff's interests, or a negligent one, or conduct which is abnormal and out of place in its surroundings, and so falls fairly within the principle of strict liability....

. . . .

Nuisance, in short, is not a separate tort in itself, subject to rules of its own. Nuisances are types of damage—the invasion of two quite unrelated kinds of interests [the public v. private distinction], by conduct which is tortious because it falls into the usual categories of tort liability. (Footnotes omitted.)

4 *Restatement of the Law, Torts 2d* § 821A, comment c (1979) states:

[F]or a nuisance to exist there must be harm to another or the invasion of an interest, but there need not be liability for it. If the conduct of the defendant is not of a kind that subjects him to liability, the nuisance exists, but he is not

liable for it. In other words, as it is used in the Restatement, "nuisance" does not signify any particular kind of conduct on the part of the defendant. Instead, the word has reference to two particular kinds of harm—the invasion of two kinds of interests [again, public v. private]—by conduct that is tortious only if it falls into the usual categories of tort liability. (Citation omitted.)

*See also* IV *Restatement of the Law of Torts* (First) ch. 40 at 215–224 (1939).

Moreno and Nichols rely on *Huntsman v. Smith*, 62 N.M. 457, 312 P.2d 103 (1957), for a contrary view. *Huntsman* was a negligence case, but it quotes from 65 C.J.S. *Negligence* for the distinction between nuisance and negligence. A portion of that quotation states:

"Negligence has been said to be a violation of a relative duty, nuisance of an absolute duty; that is, the creation or maintenance of a nuisance is the violation of an absolute duty, the doing of an act which is wrongful in itself, whereas negligence is the violation of a relative duty, the failure to use the degree of care required under the particular circumstances in connection with an act or omission which is not of itself wrongful. . . ."

*Id.* 62 N.M. at 463, 312 P.2d 103. This quotation can be taken either to illustrate Professor Prosser's point or, by emphasizing that the quotation deals with wrongful acts, can be considered consistent therewith because nuisance depends on tortious conduct within the usual categories of tort liability. The quotation from *Huntsman* is of no assistance in this case.

■ The duty imposed by the fireman's rule applies in cases where damages are sought for nuisance. The duty applies in determining whether there is tort liability. If there is liability, there may or may not be a recovery for damages for a nuisance. Negligence is one type of tort liability for which there may be liability with a resultant imposition of damages for nuisance.

**Propriety of the Summary Judgment**

■ The summary judgment in favor of Corral, Inc. was granted on the basis that there had been no violation of its duty to the firemen plaintiffs. There is no suggestion in the appellate record of a violation of duty by a misrepresentation. The only "duty" aspect in the record before us is the duty to warn of a known, hidden peril. Corral, Inc. had the burden of showing an absence of a material fact issue as to this duty. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

Whether Corral, Inc. met this burden depends on the transcript of an unsworn, recorded statement of Wayne Marrs, included as part of answers to interrogatories. According to this statement, (1) the warehouse contained "mud" (an undefined oil field term), scale inhibitors, caustic soda and para-formaldehyde; (2) a telephone call informed Marrs of the fire, and he immediately drove to the scene, arriving at 9:30 a.m.; (3) Marrs knew that water on para-formaldehyde would cause caustic fumes; (4) Marrs talked to the city manager once or twice during the morning; (5) about 1:00 p.m. he asked two policemen to please call "whoever you have to and tell them not to put water on that fire because they are continuously giving off the fumes from this para-formaldehyde"; and (6) "I finally got that across and about an hour and a half later they stopped."

■ If the transcript of Marrs' unsworn statement is considered as an attachment to the answers to interrogatories, it does not support the summary judgment because it is an unsworn statement. *Martin v. Board of Education of City of Albuquerque*, 79 N.M. 636, 447 P.2d 516 (1968); *Cordova v. City of Albuquerque*, 86 N.M. 697, 526 P.2d 1290 (Ct.App.1974). If the transcript of Marrs' unsworn statement is considered as a part of the answers to interrogatories, and not as an attachment, the statement still does not support summary judgment. The reason is that Marrs' unsworn statement is not adopted

as personal knowledge of the person answering the interrogatories and does not show facts admissible in evidence by the person answering. NMSA 1978, Civ.P.R. 56(e)(Repl.Pamp.1980); *H.B. Zachry Company v. O'Brien,* 378 F.2d 423 (10th Cir. 1967).

Corral, Inc. does not contend that Marrs' unsworn statement, in itself, is sufficient to sustain the summary judgment. It claims its prima facie showing was sufficient "because of plaintiffs' failure to follow procedures for challenging defendants' showing." Corral, Inc. also states: "By failing to file a timely motion to strike and by failing to object, the plaintiffs waived any defects attributable to the answers." *See Chavez v. Ronquillo,* 94 N.M. 442, 612 P.2d 234 (Ct.App.1980).

■■■ The motion for summary judgment violated a local rule requiring the motion to set forth the material facts as to which movant contends no genuine issue exists, and to contain a short, concise statement of the grounds in support thereof. *See Skelton v. Gray,* 101 N.M. 158, 679 P.2d 826 (1984). At the motion hearing, the attorney for City of Lovington stated that neither he nor the attorney for Moreno and Nichols had any objections to a summary judgment in favor of Marrs, individually, but objected to a hearing on the motion of Corral, Inc. The City's attorney claimed that he had not understood that Corral, Inc.'s motion was set for hearing. The City's attorney asked for a continuance. The trial court asked Corral, Inc.'s attorney if she objected to a continuance. Corral, Inc.'s attorney avoided answering the court. The trial court did not rule on the motion for a continuance. The only inference from the record is that the attorney for Moreno and Nichols had also not understood that Corral's motion would be heard, and had not appeared because he had no objection to a summary judgment in favor of Marrs, individually. The City's attorney asked for permission of *all* plaintiffs to file a written response and the trial court stated, "I'll give you an opportunity to submit

me something." The City's attorney and the attorney for Moreno and Nichols understood the trial court's remark to apply to all plaintiffs. Corral, Inc. contends the trial court's remark only applied to the City. Moreno and Nichols filed a motion to strike the answers to interrogatories and all attachments to the answers on the day following the summary judgment hearing. The trial court never ruled on this motion. All plaintiffs filed written responses to Corral, Inc.'s motion on the third day following the summary judgment hearing. The trial court then wrote a letter declaring Moreno and Nichols to be in default; however, it granted summary judgment.

■■■ The circumstances recited in the foregoing paragraph show, as a fact, that there was no waiver. Corral, Inc.'s showing did not entitle it to summary judgment.

Our ruling on the waiver issue makes it unnecessary to identify or decide the other procedural issues going to the propriety of the summary judgment.

Corral, Inc. asserts that the summary judgment should be affirmed on its merits. This argument applies only to Moreno because it is based on Moreno's deposition testimony, which does not involve Nichols. Corral, Inc. relies on testimony by Moreno that: (1) Moreno had been told the fumes were toxic, that the school children were evacuated because of toxic fumes and smoke; (2) Moreno did not have a gas mask and did not ask for one; (3) when Moreno went to the Spanish-speaking area of Lovington, he knew it was possible someone might have been hurt because the smoke was pretty heavy; (4) Moreno went to the Spanish-speaking area without a gas mask and made no objection to the absence of the availability of oxygen once Moreno left the vehicle in which he was transported. Corral, Inc. asserts that this testimony shows that Moreno assumed the risk as a matter of law. We disagree.

■■■ Corral, Inc.'s argument uses "assumption of risk" in the secondary sense which, pursuant to *Williamson v. Smith,*

83 N.M. at 340, 491 P.2d 1147, "is in reality nothing more than contributory negligence" and is to be governed by the principles pertaining to contributory negligence. In light of Moreno's deposition testimony that he had been a fireman for one and one-half months, was essentially untrained, functioned as a helper and did as he was told, the issue of Moreno's assumption of risk, in the contributory negligence sense, is a factual question. Moreno did not assume the risk as a matter of law. So holding, the application of comparative negligence principles is not yet involved.

The summary judgment in favor of Corral, Inc. is reversed. The cause is remanded to the district court for further proceedings consistent with this opinion. Corral, Inc. shall pay the appellate costs.

**IT IS SO ORDERED.**

HENDLY and NEAL, JJ., concur.